H. Kenneth KUDON, et al., Appellants,

v.

f.m.e. CORPORATION, d/b/a Friden Alcatel, Appellee.

No. 87–848.

District of Columbia Court of Appeals.

Argued June 28, 1988.
Decided Sept. 16, 1988.

Joseph M. Cahill, with whom Dale A. Cooter, Washington, D.C., was on the brief, for appellants.

John T. Kotelly, with whom Marlene D. Beckman, Washington, D.C., was on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK and NEWMAN, Associate Judges.

PRYOR, Chief Judge:

Dale A. Cooter and Carl L. Gell, on behalf of appellant, the law firm of Cooter & Gell (Cooter & Gell), brought suit against appellee, f.m.e. Corporation, d/b/a Friden Alcatel (Friden Alcatel), one of four companies in the United States authorized to manufacture postage meters, alleging tortious interference with contractual relations with the United States Postal Service and seeking $50,000 in compensatory damages and $1,000,000 in punitive damages. Friden Alcatel denied liability and asserted

counterclaims for breach of contract, conversion, and writ of replevin, and sought $2,105.10 in compensatory damages and $100,000 in punitive damages.

On March 10, 1986, a trial judge ruled that Friden Alcatel was privileged to interfere with Cooter & Gell's contract with the Postal Service and therefore granted Friden Alcatel's motion for summary judgment dismissing Cooter & Gell's complaint for tortious interference with contract. By order dated April 21, 1986, the pretrial conference judge instructed the parties to file cross motions for *in limine* rulings on the issue of attorneys' fees. On June 2, 1986, a third trial judge ruled that the provision in the lease agreements between the parties provided for reasonable attorneys' fees, including those fees incurred by Friden Alcatel in defending against Cooter & Gell's complaint and in prosecuting its own counterclaims, and that the amount of attorneys' fees was to be determined by the trial court in a separate bifurcated hearing subsequent to any verdict rendered by the jury in favor of Friden Alcatel.

On January 8, 1987, following a three-day trial, the jury awarded Friden Alcatel $814 in compensatory damages for its breach of contract claim, but no damages for its conversion claim. Then, on June 25, 1987, pursuant to the third trial judge's ruling, the presiding trial judge awarded Friden Alcatel $5,795 in attorneys' fees for its defense of Cooter & Gell's complaint, $8,200 for prosecution of its counterclaims, and $849.01 in costs.[1]

On appeal, Cooter & Gell contends that under the Seventh Amendment to the Constitution it was entitled to a jury trial on the issue of attorneys' fees and that the trial court erred in ruling that it was contractually liable for attorneys' fees incurred by Friden Alcatel in defending against the complaint for tortious interference with contract.[2] Finding these contentions unpersuasive, we affirm the judgment below in all respects.

I

On January 17, 1979, and on April 30, 1980, Cooter & Gell entered into two lease

---

**1.** The presiding trial judge denied Cooter & Gell's request for a hearing on the issue of attorneys' fees. He noted that the parties "had full opportunity to submit, and did submit, written arguments," and that because the expenses in the case were already "wildly out of proportion to the issues," neither the parties nor the court "would be well served by yet a further substantial expenditure of time and resources." This ruling is not challenged on appeal.

**2.** Cooter & Gell also argues that the trial judge erred in ruling that Friden Alcatel was privileged to interfere with its contract with the United States Postal Service. In support of this argument, Cooter & Gell cites to § 773 RESTATEMENT (SECOND) OF TORTS (1979), which provides:

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Cooter & Gell contends that because Friden Alcatel filed a Lost/Stolen Checkout Report with the Postal Service concerning a meter that was neither lost nor stolen, and because the

cover letter accompanying that report stated that "this action is being taken due to the inability of our office to locate the customer to whom this meter was licensed," Friden Alcatel did not assert its privilege through appropriate means, and thus lost the defense contemplated by § 773. Because the record shows that Friden Alcatel's policy is to file the report when it is unable to repossess a particular meter due to the customer's refusal to return it, and Cooter & Gell proffered no evidence on this point, we will not disturb the trial judge's ruling that Friden Alcatel was privileged to interfere with the contractual relations existing between Cooter & Gell and the United States Postal Service.

In addition, Cooter and Gell contends that the amount of fees awarded by the trial judge to counsel for Friden Alcatel was excessive. "[T]he trial court has discretion to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." *United States v. Western States Mechanical Contractors*, 834 F.2d 1533, 1548 (10th Cir.1987) (citations omitted). In the instant case, the trial judge found the original fee request to be unreasonable and accordingly reduced the amount of the fee award. We affirm that award for our review of the record leads us to conclude that the trial judge did not abuse his discretion in allocating the amount of hours reasonably expended or in utilizing the hourly rates contained in the fee schedule submitted by counsel for Friden Alcatel.

agreements with Friden Alcatel for the lease and usage of two postage meters. Cooter & Gell agreed to pay Friden Alcatel a monthly rental fee of $11.75, payable in advance on a semi-annual basis. The agreement provided that the lease was to remain in force for a term of one year and successive annual renewal periods thereafter.

In late 1980, Cooter & Gell ceased making rental payments but retained the meters and continued their use for the next four years. During that time, Friden Alcatel made several unsuccessful attempts by telephone and in writing to collect the rents due. Then, on January 16, 1984, pursuant to the terms of the lease agreements, Friden Alcatel dispatched a service representative to the offices of Cooter & Gell for the purpose of repossessing the meters. That attempt, however, proved unsuccessful. Then, on August 31, 1984, Friden Alcatel filed a Lost/Stolen Checkout Report with the United States Postal Service. Friden Alcatel stated in its cover letter that one of the meters held by Cooter & Gell was lost or stolen and that it was unable "to locate the customer to whom this meter was licensed." In addition, Friden Alcatel requested that if the meter were presented, it should not be set, and that its offices should be telephoned immediately. Sometime thereafter, when Cooter & Gell attempted to purchase postage for its meter, it was informed by the Postal Service that its meter license had been canceled. Friden Alcatel then dispatched another representative to repossess the meters, but that attempt again proved unsuccessful. The litigation which formed the basis for this appeal then followed.

## II

Cooter & Gell contends that under the Seventh Amendment to the Constitution it was entitled to a jury trial on Friden Alcatel's claim for attorneys' fees because that claim arose from a private contract provision and was therefore in the nature of a legal claim for damages. Friden Alcatel responds that most courts which have addressed the issue have concluded that a claim for attorneys' fees arising from a private contract provision is equitable in nature, and therefore, in the instant case, a jury trial was not constitutionally required.

■ The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Although not incorporated to the states through the Fourteenth Amendment, the Seventh Amendment, "is, like other provisions of the Bill of Rights, fully applicable to courts established by Congress in the District of Columbia." *E.R.B. v. J.H.F.*, 496 A.2d 607, 610 n. 6 (D.C.1985) (citations omitted). While historically the amendment was intended "to preserve the right to jury trial as it existed in 1791," *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974), the guarantees afforded have been interpreted to encompass

> ... not merely suits, which the *common law* recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered....

*Id.* (quoting *Parsons v. Bedford*, 3 Pet. 433, 446–47, 7 L.Ed. 732 (1830) (emphasis in original)). The Supreme Court has stated that "[t]he Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) (footnote omitted). "[W]here the issue in dispute is legal in nature a constitutional right to trial by jury attaches; where the issue, however, is equitable in nature there is no constitutional right to a jury trial." *E.R.B. v. J.H.F., supra*, 496 A.2d at 611 (citation omitted). The nature of the issue may be determined by considering "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Ross v. Bernhard, supra*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10.

Although, "[a]t common law attorneys' fees are not compensable damages nor are they the appropriate measure of punitive damages," *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256, 262 (1st Cir.) (citing *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796); *Day v. Woodworth*, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1851)), *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976), the English courts, for centuries, have been authorized by statute to award costs and attorneys' fees to the prevailing party, although the matter is discretionary. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 & n. 18, 95 S.Ct. 1612, 1616 & n. 18, 44 L.Ed.2d 141 (1975); 22 Am.Jur.2d *Damages* § 611 (1988). Under the American Rule, however, "attorney's fees are not ordinarily recoverable by a prevailing litigant unless a statute or a contract specifically provides for an award of such fees." *Cahn v. Antioch University*, 482 A.2d 120, 132–33 (D.C.1984).[3] Thus, although consideration of the pre-merger custom is not dispositive, it "suggests that attorneys' fees and costs have traditionally been viewed as a determination to be made by the court rather than by a jury." *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.*, 553 F.Supp. 118, 123 (N.D. Ill.1982); *Redshaw Credit Corp. v. Diamond*, 686 F.Supp. 674 (E.D.Tenn.1988).

■ We next observe that "[t]he fact that a claim for attorneys' fees can be characterized as one for monetary damages does not compel its classification as a 'legal' remedy." *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc., supra*, 553 F.Supp. at 124 (citing *Curtis v. Loether, supra*, 415 U.S. at 196, 94 S.Ct. at 1009); *Redshaw Credit Corp. v. Diamond, supra*. Although there appears to be a dearth of case law on the subject, we are in agreement with those courts which have held that where an award of attorneys' fees is authorized by a private contract provision, such an award is more in the

nature of an equitable, rather than a legal, remedy. *See A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc., supra*, 553 F.Supp. at 124 (claim for costs and attorneys' fees authorized by private contract is claim for reimbursement and thus more restitutionary in nature than claim for back pay); *Cheek v. McGowan Electric Supply Co.*, 511 So.2d 977, 979 (Fla.1987) (contractual provision authorizing payment of attorneys' fees not part of substantive claim because only intended to make successful party whole by reimbursing him for expense of litigation); *cf. Empire State Insurance Co. v. Chafetz*, 302 F.2d 828, 830 (5th Cir.1962) (state statute authorizing award of reasonable attorneys' fees did not create independent right of action upon which suit for money judgment could be maintained nor did statutory cause of action resemble suit at common law and therefore jury trial not constitutionally required); *Maday v. Elview–Stewart Systems Co.*, 324 N.W.2d 467, 469 (Iowa 1982) (relying on legislative intent and siding with authorities in reaching conclusion that where statute authorizes attorneys' fees but is silent as to their ascertainment such fees are in the nature of costs) (quoting 20 Am.Jur.2d *Costs* § 72 (1965)).

Finally, given "(1) the presumed expertise of courts in matters of attorney fees, (2) the inordinate waste of time and expense which would be required to educate lay jurors on those matters about which the court is presumed an expert and (3) the unacceptable expense and delay of bifurcating trials in order to separate issues of liability from lawyer skill and preparedness," *Ayala v. Center Line, Inc.*, 415 N.W.2d 603, 605 (Iowa 1987) (citing *Maday v. Elview–Stewart Systems Co., supra*, 324 N.W.2d at 470), we believe that the question of what constitutes a reasonable attorneys' fee, although not entirely incapable of jury resolution, is one better left for the court. *See Redshaw Credit Corp. v. Diamond, supra; A.G. Becker–Kipnis & Co.*

---

**3.** As further exceptions to the American Rule, attorneys' fees are recoverable where "the other party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" *General Federation of Women's Clubs v. Iron Gate Inn, Inc.*,

537 A.2d 1123, 1127–28 (D.C.1988) (citations omitted), or where a person has "preserve[d] or recover[ed] a fund or property for the benefit of others." *Passtou, Inc. v. Spring Valley Center*, 501 A.2d 8, 11–12 (D.C.1985) (citations omitted).

*v. Letterman Commodities, Inc., supra,* 553 F.Supp. at 124.[4]

In light of the foregoing, we conclude that where a claim for attorneys' fees arises from a private contract provision, such a claim does not embody a right to trial by jury under the Seventh Amendment.

## III

■ The next argument raised by Cooter & Gell pertains to whether the provision in the lease agreements between the parties encompasses an award of attorneys' fees to Friden Alcatel for its defense of Cooter & Gell's complaint. The provision provides, in relevant part, as follows:

> RIGHTS OF f.m.e. In the event of Lessee's failure to comply with any of the provisions of this agreement, or if any writ, process or proceeding shall be instituted wherein the Meter may be levied upon or affected, f.m.e. may, without notice, terminate this agreement and enter upon any premises where the Meter may be located and repossess it with or without legal process; and, in such event, Lessee shall pay, upon demand by f.m.e., all accrued rental, all rental for the unexpired term of the agreement and reasonable attorney fees.[5]

In circumstances analogous to those present here, courts have considered the following factors in determining whether a party requesting an award of attorneys' fees pursuant to a contract provision is entitled to a fee recovery for defending a claim by the party opposing payment of such fees: (1) whether the party requesting the fees was responsible for precipitating the litigation, *Michael–Regan Co. v. Lin-*

*dell,* 527 F.2d 653, 657–58 (9th Cir.1975) (citing *National Bank of Washington v. Myers,* 75 Wash.2d 287, 450 P.2d 477 (1969)); (2) whether the litigation for which the party relying on the contract provision recovers the fees was bona fide and made necessary by the party opposing payment of such fees, *Ecco–Phoenix Electric Corp. v. Howard J. White, Inc.,* 1 Cal.3d 266, 273, 81 Cal.Rptr. 849, 853, 461 P.2d 33, 36 (1969), *cited in Michael–Regan Co. v. Lindell, supra,* 527 F.2d at 656–57 n. 1; (3) whether the claim asserted by the party opposing payment of such fees was raised by way of offset in an attempt to reduce or extinguish the debt owed to the party requesting the fees, *Jaeger v. Canadian Bank of Commerce (California),* 327 F.2d 743, 745–46 (9th Cir.1964); and (4) whether it was necessary for the party requesting the fees to defend against the claim of the party opposing the fees in order to collect the underlying debt or enforce the underlying contractual obligation. *See Michael–Regan Co. v. Lindell, supra,* 527 F.2d at 658–59; *Universal Drilling Co. v. Camay Drilling Co.,* 737 F.2d 869, 875–76 (10th Cir.1984) (quoting *Duryea v. Third Northwestern National Bank of Minneapolis,* 606 F.2d 823, 826 (8th Cir.1979)).

An application of the above factors to the instant case leads to the conclusion that the scope of the provision in the lease agreements encompasses an award of attorneys' fees to Friden Alcatel for its defense of Cooter & Gell's complaint. Cooter & Gell was the party responsible for precipitating the litigation, and Friden Alcatel's defense of Cooter & Gell's complaint was clearly bona fide and made necessary by Cooter & Gell. Moreover, although it is unlikely that Cooter & Gell's complaint was filed by way

---

**4.** We recognize that the applicability of the third *Ross* factor remains open to debate. *See* C. WRIGHT, FEDERAL COURTS § 92, 614–16 (4th ed. 1983); *Phillips v. Kaplus,* 764 F.2d 807, 814 & n. 6 (11th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Cotten v. Witco Chemical Corp.,* 651 F.2d 274, 276 (5th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 448 (1982); *In re U.S. Financial Securities Litigation,* 609 F.2d 411, 424–31 (9th Cir.1979), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980); *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc., supra,*

553 F.Supp. at 124. We note, however, that consideration of that factor is not necessary to the conclusion we reach today.

**5.** We interpret this provision to require Cooter and Gell to pay attorneys' fees to Friden Alcatel in connection with efforts by the latter to collect the rents due, terminate the lease agreements, or repossess the meters, so long as those efforts were made necessary by Cooter and Gell's failure to comply with the terms of the lease agreements.

of offset in an attempt to reduce or extinguish the debt owed to Friden Alcatel, because that complaint directly attacked the validity of the actions taken by Friden Alcatel in attempting to terminate the lease agreements and repossess the meters, Friden Alcatel faced the real possibility that it would be collaterally estopped from relitigating certain genuine issues of material fact in a subsequent suit to enforce its rights under the lease agreements.[6] It may therefore be said that Friden Alcatel's defense of Cooter & Gell's complaint was integral to the prosecution of its counterclaims.

AFFIRMED.

---

6. Given the fact that Friden Alcatel's counterclaims were compulsory in nature since they arose out of the same transaction or occurrence that was the subject matter of Cooter & Gell's complaint, Super.Ct.Civ.R. 13(a), not only was the threat of issue preclusion substantial, but failure by Friden Alcatel to plead its counterclaims could have barred it from bringing a later independent action on those claims. *See District of Columbia v. Morris,* 367 A.2d 571, 574 (D.C.1976).