**OLIVER T. CARR COMPANY,**
Appellant,

v.

**UNITED TECHNOLOGIES COMMUNICATIONS COMPANY,**
Appellee.

**No. 91–58.**

District of Columbia Court of Appeals.

Argued Nov. 1, 1991.
Decided March 10, 1992.

---

Richard A. Green, with whom William Joseph H. Smith and Colin J. Smith were on the brief, Washington, D.C., for appellant.

Ky E. Kirby, with whom Andrew D. Lipman and Russell M. Blau were on the brief, Washington, D.C., for appellee.

Before FERREN and WAGNER, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

The parties to this litigation entered into a contract pursuant to which Oliver T. Carr Company [hereinafter "Carr"] agreed to purchase a telephone system from United Technologies Communications Company [hereinafter "UTCC"]. UTCC did make delivery and Carr paid ninety percent of the contract price, some $67,000. Carr, however, was dissatisfied with what it had purchased. Ultimately, Carr filed suit for breach of contract and breach of warranty. UTCC defended against Carr's suit. In addition, UTCC filed a counterclaim for the remaining ten percent due and unpaid.[1]

The trial court (the United States District Court for the District of Columbia) concluded after hearing testimony that Carr failed to carry its burden of proof as the plaintiff in its breach of contract and warranty suit and entered judgment for UTCC, except with respect to some minor problems Carr had with the voltage in the telephone system for which the court awarded $1,485 compensation to Carr. As to the counter-

claim by UTCC for the amount it asserted Carr had left unpaid under the contract, the court entered judgment for UTCC.

The court awarded court costs and attorneys' fees to UTCC in the amount of some $216,000 it had incurred in (1) defending Carr's suit, (2) pursuing its counterclaim against Carr for ten percent of the purchase price due and remaining unpaid under the contract, and (3) preparing a fee petition and litigating its right to fees. *The Oliver T. Carr Co. v. United Technologies Communications Co.*, Memorandum and Order, Civil Action No. 85–1432 at 5 (D.D.C. February 9, 1990).

Carr contends that it was liable for only a fraction of the attorneys' fees awarded by the trial court, and that the fee award was unreasonable in any event. Carr unsuccessfully sought modification by the trial court of its award and then appealed to the United States Court of Appeals for the District of Columbia Circuit. Carr maintains that the award was too large for three reasons:

(1) that UTCC is entitled under the contract *only* to fees incurred in litigating its counterclaim for the balance of the purchase price of the system and not for those fees incurred in defending against Carr's claims for breach of warranty and contract ("defensive fees"); (2) that the contract does not provide for fees incurred in litigating the fee award ("secondary fees"); and (3) that the contract does not permit an award of fees incurred by UTCC in litigating its counterclaim for the price of the additional equipment.

*Oliver T. Carr Co. v. United Technologies Communications Co.*, Memorandum, No. 90–7035 at 5 (U.S.App.D.C. January 16, 1991) (emphasis added).

The Circuit Court concluded that with respect to this last argument, Carr had waived its ground for objection by not raising the issue in the trial court. Thus, the Circuit Court, *sua sponte* and pursuant to

---

1. UTCC also counterclaimed for the price of some additional equipment and its costs of re-

moving the system from Carr's offices, but this aspect of the dispute is not at issue here.

the applicable statute,[2] has certified to this court for determination under applicable local law the remaining issues; *i.e.,* "whether ... the contractual provision at issue here should be construed to authorize an award to UTCC of either defensive [attorneys'] fees or secondary [attorneys'] fees." *Id.* at 6.

The Circuit Court states that "questions of District of Columbia law are determinative of the pending appeal" and believes these questions are "without controlling precedent in the decisions" of this court. *Oliver T. Carr Co. v. United Technologies Communications Co.,* Certification of Question of Law, No. 90–7035 (U.S.App. D.C. January 16, 1991). The court expresses concern that it "is not now positioned to render a secure, nonconjectural disposition of the cause, and, therefore, on its own motion, certifies these questions of law to the District of Columbia Court of Appeals." *Id.* Also, the court notes two decisions by this court which appear to be inconsistent: *Ochs v. L'Enfant Trust,* 504 A.2d 1110 (D.C.1986) and *Kudon v. f.m.e. Corp.,* 547 A.2d 976 (D.C.1988).

The questions of law, according to the United States Court of Appeals for the District of Columbia Circuit, were two-fold. First, the court asked:

[D]oes a contract providing that "in the event any amounts due and remaining unpaid ... are referred [by the seller] to an agency or attorney for collection, Customer shall be responsible for and pay any and all costs associated with such collection including ... a reasonable attorney's fee" permit an award to the seller [UTCC] of attorney's fees incurred in defending against a breach of warranty claim brought by the customer [Carr] in addition to fees incurred in litigating a counterclaim for the amount due under the contract?

The second question of law the court referred to this court is:

Under District of Columbia law, and given the undisputed facts ... does the same contractual provision permit an award of attorneys' fees incurred by the seller [UTCC] in litigation concerning the size of the fee award?

*Id.* at 2.

At the outset, we note that this jurisdiction follows "the American Rule under which ... 'every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions'" such as the conventional "bad faith" exception. *Dalo v. Kivitz,* 596 A.2d 35, 37, 39 (D.C.1991) (quoting *Synanon Found., Inc. v. Bernstein,* 517 A.2d 28, 35 (D.C.1986)). In the instant case, the Circuit Court concluded that Carr neither acted in bad faith nor maintained an unfounded action. *Carr,* Memorandum, *supra* at 4. Thus, the so-called American rule would prevail here unless the provision of the contract between Carr and UTCC provided otherwise.

■ As we have noted, the parties agreed in their sales contract that the "Customer," *i.e.,* Carr, should be responsible for all costs, including a reasonable attorney's fee, if the "Seller," *i.e.* UTCC, referred for collection any amounts due and remaining unpaid by the customer under the contract. UTCC did have its attorneys bring suit in the form of a counterclaim against Carr for the ten percent of the contract price Carr did not pay and was therefore "due and remaining unpaid" within the terms of the sales agreement. The sales contract went on to provide that should UTCC be required to undertake collection, it then could recover from Carr all costs, including a reasonable attorney's fee, that were "associated with such collection." In our view, the parties would have reasonably thought this agreement meant what it

---

**2.** D.C.Code § 11–723 (1989 Repl.). This section provides in pertinent part:

The District of Columbia Court of Appeals may answer questions of law certified to it by ... a Court of Appeals of the United States ... if there are involved in any proceeding before

[it] ... questions of law of the District of Columbia which may be determinative of the cause pending in such certifying court and as to which it appears ... there is no controlling precedent in the decisions of the District of Columbia Court of Appeals.

said: the seller's recovery from the customer of costs, when the former undertook collection from the latter of an unpaid balance under the contract, was limited to the costs of *such* collection.[3] In this case, UTCC's counterclaim constituted its collection and hence UTCC was entitled under the terms of the sales agreement with Carr to recover only its costs of such collection.

We deem the instant case to be akin to the situation in *Ochs, supra,* 504 A.2d 1110. There, a dispute between an apartment owners' association and an individual unit owner in the building produced litigation. *Id.* at 1118–19. The association ultimately sought to recover attorneys' fees, relying upon the agreement between the parties. The agreement provided in pertinent part that "[i]n any proceeding arising out of any alleged default by a Unit Owner, the prevailing party shall be entitled to recover ... such reasonable attorney's fees as may be determined by the court." *Id.* This court concluded that while the initial action by the unit owner and the association's counterclaim were "undoubtedly related," the association's defense against the owner's original action did *not* arise from "any default" by the unit owner. Accordingly, this court upheld the award of the attorneys' fees incurred by the association in its counterclaim based upon the unit owner's default in the payment of his assessment, but overturned the trial court's award of attorneys' fees in favor of the association in its defense against the unit owner's action. *Id.* This court noted that this result "could have been avoided by the Association had it more providently worded the pertinent provision of the condominium instruments." *Id.* at n. 9.

Here, Carr's initial action and UTCC's counterclaim for the moneys due and unpaid under the sales contract were undoubtedly related in the sense that they evolved from the overall dispute between the parties as to the quality of the tele-phone system purchased. However, the contract between Carr and UTCC specifically provided that the seller (UTCC) was enabled to recover its attorneys' fees only if it was required to undertake collection, and then to recover only the attorneys' fees associated with the collection action. Thus, we conclude that the contract clause providing for shifting of fees "associated with ... collection" does not cover fees the seller incurs in defending the buyer's claim.

We recognize that for us to hold otherwise in this case could have a profound impact on consumers in this jurisdiction, who frequently, and in good faith, challenge the quality of merchandise purchased through credit contracts that may very well have fee-shifting language similar to the "collection" provision in the instant case. Consequently, sound public policy dictates that the party being asked to assume the obligation of paying attorneys' fees in contravention of the American rule should receive adequate notice of the scope of its obligation. As we noted in *Ochs,* the seller is enabled to avoid the result adverse to it by a "more providently worded" provision governing the recovery of attorneys' fees. *Id.* Accordingly, the answer to the first question posited by the United States Court of Appeals for the District of Columbia Circuit must be in the negative: the contract provision involved here does not permit an award to UTCC of attorneys' fees incurred in defending against the claims brought by Carr.

We find nothing in *Kudon, supra,* 547 A.2d 976, inconsistent with our conclusion in the instant case. Crucial to our decision there was the fact that the lease agreement between the parties was drafted quite broadly. Thus, the lease of the postage meters there provided that

> [i]n the event of Lessee's failure to comply with any of the provisions of this agreement ... [the Lessor] may, without notice, terminate this agreement and en-

---

3. This court has stated that "[t]he first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *Intercounty Construction Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982).

Thereafter, if the terms of the contract "are still not subject to 'one definite meaning' ... the ambiguities remaining in the contract will be 'construed strongly against the drafter.'" *Id.* (quoting *1901 Wyoming Cooperative Association v. Lee,* 345 A.2d 456, 462–63 (D.C.1975)).

ter upon any premises where the Meter may be located and repossess it with or without legal process; and, in *such event,* Lessee shall pay ... all accrued rental, all rental for the unexpired term of the agreement and *reasonable attorney fees.*

*Id.* at 980 (emphasis added) (footnote omitted).

This court upheld the award of attorneys' fees pursuant to the broad scope of this provision, noting that the Lessee had failed to comply with several provisions of the agreement. First, the Lessee failed for more than four years to pay the Lessor the monthly amount due under the lease for the two postage meters it had rented. In addition, the Lessee had prevented the Lessor from repossessing the two meters during the time it possessed but did not pay for the meters as provided for in the lease agreement. This court concluded that these actions by Lessee constituted "failure to comply with the terms of the lease agreements" and hence, under the explicit terms of the contract, required the Lessee to pay the Lessor reasonable attorneys' fees "in connection with [the Lessor's] efforts ... to collect the rents due, terminate the lease agreements, or repossess the meters." *Id.* at n. 5.[4]

We can understand why there has been confusion over how to reconcile *Ochs* and *Kudon,* for both concerned the applicability of a fee shifting provision to defensive fees; and they appear to require different approaches. Moreover, *Kudon* did not even cite *Ochs.* The fee provision in the *Ochs* contract, however, was quite specific: fees for a proceeding "arising out of any

alleged default." The *Kudon* provision was much more open-ended: fees attributable to "lessee's failure to comply with any of the provisions of this agreement." We therefore concluded in *Kudon* that the latter kind of provision must be limited by application of four specified factors. Although the distinction between a specific and an open-ended fee provision will obviously be a difficult one to make in many cases, we are satisfied that, in the instant case, the provision for fees in the event a debt is "referred to an agency or attorney for collection" is sufficiently specific to warrant analysis under *Ochs,* not *Kudon.*[5]

■ Our answer to the second question posited by the Circuit Court is again dictated by the express language of the contract. The parties provided in their sales contract that if the seller was required to initiate collection of any amount due and remaining unpaid, the customer was required to absorb the costs, including a reasonable attorney's fees, "associated with such collection."

We have concluded that this contract language entitles UTCC to recover attorneys' fees incurred in pursuing the counterclaim for ten percent of the contract price but does not entitle UTCC to recover attorneys' fees incurred in defending Carr's claim. It follows that "secondary fees" contained in the cost of the collection action, *i.e.,* for preparation of its fee petition and for litigation of the size of the fee award relating to the counterclaim, may be recovered by UTCC. Under the terms of the parties' contract, however, UTCC is not entitled to any fees associated with its defense against Carr's complaint, including "sec-

---

4. In *Kudon,* having first determined that language of the contract did provide for shifting of attorneys' fees, this court then considered "whether a party requesting an award of attorneys' fees pursuant to a contract provision is entitled to a fee recovery for defending a claim by the party opposing payment of such fees." *Kudon, supra,* 547 A.2d at 980. The court applied four factors to the particular facts and circumstances in *Kudon* and concluded that the scope of the provision in the lease agreements also encompassed an award for "defensive" fees. *Id.*

5. In *Stansel v. American Security Bank,* 547 A.2d 990, 995 (D.C.1988), we remanded for reconsid-

eration of "whether the provision in a promissory note allowing for reasonable attorney's fees as costs of collection also encompasses the costs incurred by the bank in defending itself against [promisor's] counterclaims." We cited both *Ochs* and *Kudon* without analysis, leaving it to the trial court "to take a fresh look at this issue in light of *Kudon,*" *id.* at 995 n. 7, which had been decided only a week earlier than *Stansel.* In the present case, we have looked at a similar provision and conclude that *Kudon* cannot serve to enlarge the scope of a fairly specific fee provision.

ondary fees." Consequently, UTCC is entitled to recover from Carr whatever amount of the so-called "secondary fees" the trial court ultimately determines is reasonable and attributable solely to the counterclaim.