Ella M. PELLERIN, Appellant,

v.

1915 16TH STREET, N.W., COOPERATIVE ASSOCIATION, INC., Appellee.

No. 03–CV–1295.

District of Columbia Court of Appeals.

Argued Feb. 23, 2006.
Decided June 1, 2006.

---

Johnny M. Howard, Washington, DC, for appellant.

Jack D. Lapidus, Washington, DC, and Edward P. Henneberry, with whom Kevin B. McParland, Bethesda. MD, was on the brief, for appellee.

Before RUIZ and GLICKMAN, Associate Judges, and STEADMAN, Senior Judge.

GLICKMAN, Associate Judge:

This appeal is from a grant of summary judgment and an award of attorney's fees in litigation between a housing cooperative and the personal representative of the estate of one of the cooperative's former members. We find it necessary to remand the case for the trial court to decide whether to allow the personal representative to add a new claim in her suit against the cooperative for breach of contract, and for clarification of the attorney's fee award in the cooperative's counterclaim against the estate.

## I.

Appellant Ella Pellerin is the personal representative of her mother Melissa Sawyer's estate. Until her final illness and demise in April 2000, Melissa Sawyer resided in Unit 703 of the cooperative apartment building located in northwest Washington, D.C. at 1915 16th Street. Appellee, the 1915 16th Street, N.W., Cooperative Association, subsequently notified Pellerin that her mother's proprietary lease and cooperative membership (which were assets of her estate) would be terminated unless Pellerin paid approximately $18 thousand in overdue maintenance fees, non-occupancy fees and related charges.[1] When full payment was not forthcoming, a meeting of the members of the Association was held on April 2, 2002, at which—according to the minutes—the vote in favor of termination was seventeen

---

1. The Association also demanded that Pellerin evict Sawyer's grandson, who occupied Unit 703 while Sawyer was hospitalized or in a nursing home. The grandson allegedly had caused damage to the unit and numerous problems for the Association and its members. At some point, apparently before the commencement of the instant litigation, the eviction demand was satisfied.

to one, with one abstention. Following the vote, Pellerin was given until May 1 to pay the current outstanding balance or relinquish her mother's cooperative membership and possession of her apartment unit.

In response to this ultimatum, Pellerin sued the Association in Superior Court for breach of contract and "adverse possession." The complaint charged in general terms that the Association's efforts to terminate Sawyer's membership and gain ownership and control of her unit violated both the Association's By-laws and Sawyer's proprietary lease.[2] The complaint did not, however, dispute either the validity or amount of the arrearage sought by the Association or the validity of the April 2, 2002, expulsion vote of the membership. The Association moved to dismiss the complaint for failure to state a cause of action. On June 27, 2002, the trial court dismissed the adverse possession count of the complaint but left the breach of contract counts intact.

Two weeks later, the Association counterclaimed for the maintenance fees, non-occupancy fees and related charges that Sawyer owed. The Association also sought its attorney's fees pursuant to Article 3 of Sawyer's lease, paragraph 13 of which provides that if the Lessee is in default under the lease and "the Lessor shall institute an action" against the Lessee "based upon such default," "then the Lessee will reimburse the Lessor" for the reasonable attorney's fees "thereby incurred by the Lessor."[3]

On January 30, 2003, after the close of discovery, the Association moved for summary judgment on the remaining counts of the complaint and for partial summary judgment on its counterclaim. The Association asserted, *inter alia*, that it had followed the procedures set forth in its By-laws and in Sawyer's lease for terminating a member and the member's lease for non-payment of required fees. In particular, as required by Article V, Section 9 of the By-laws and Article 1(h) of the lease,[4] the

2. The theory of the complaint is unclear. The only by-law or lease provisions cited specifically in the complaint were Article V, Section 8.1 of the By-laws and Article 1(b) of the lease. Those provisions pertain to transfers of interest upon a member's death. Article V, Section 8.1 of the By-laws allows a decedent's membership in the Association to pass by will or intestate distribution to someone in the decedent's immediate family. Article 1(b) of the lease provides that while the Association ordinarily may terminate a lease if it is assigned to someone other than the owner of the corresponding certificate of ownership in the cooperative, "upon the death of any holder of this lease, this condition shall be suspended pending a sale of said certificate to the [Association], or pending an assignment of this lease to an owner of said certificate who shall have acquired the same as an entirety."

3. In its entirety, paragraph 13 of Article 3 reads as follows:

Thirteenth. (Reimbursement for Attorney's Fees) If the Lessee shall at any time be in default hereunder, and if the Lessor

shall institute an action or summary proceedings against the Lessee based upon such default, then the Lessee will reimburse the Lessor for the expense of attorney's fees and disbursements thereby incurred by the Lessor, so far as the same are reasonable in amount, and the Lessor shall have the right to collect the same as if a part of the monthly payment of said premises.

4. In pertinent part, Article V, Section 9 authorizes the Association's Board to terminate a member for failure to pay maintenance charges;

provided, however, that before the Board shall have the power to repurchase the certificate of one judged unfit for membership, such member shall have the opportunity to appear, either personally or by counsel, in his own defense before the next regular or special meeting of the members and that the Board's proposed termination is ratified by a majority vote of the members present. Article 1(h) of Sawyer's lease reiterates the requirement of a majority vote of the mem-

Association had held a membership meeting on April 2, 2002, at which "a majority of the members in attendance" voted to terminate the ownership interests of Sawyer's estate. Pellerin was notified of the meeting in advance and her attorney was present, the Association stated, when the vote was taken.

Pellerin opposed the Association's summary judgment motion on grounds immaterial to this appeal,[5] but she still did not question the April 2 membership vote. On May 6, 2003, with a pretrial conference scheduled in two weeks and its summary judgment motion not yet ruled upon, the Association filed motions *in limine*, one of which sought to limit Pellerin to the specific lease and By-law claims articulated in her complaint.

On May 14, 2003, the parties filed a Joint Pretrial Statement. In this Statement, Pellerin for the first time claimed that the April 2, 2002 meeting was invalid for want of a quorum as defined in Article VI, Section 4 of the By-laws, *i.e.*, "[t]he presence of a majority of the members" of the Association.[6] Specifically, Pellerin stated, "[n]o more than 10 persons attended the meeting" on April 2, because "[t]he presence of so-called proxy statements was not the equivalent of a member's presence at the meeting." The seven or eight proxy

votes cast at the meeting, Pellerin added, "did not conform with the letter or spirit" of Section 6, Article VI of the By-laws, which allows voting by proxy,[7] because the language of the proxies "did not accurately reflect the issues that were the subject of the meeting notice." The Association objected to the last-minute assertion of these new theories of liability, which its pending *in limine* motion was intended to prevent, because they were based on "facts never previously disclosed despite repeated requests in discovery and motions." In her reply to the Association's objection, which came in an opposition she filed to its motion *in limine*, Pellerin argued that the Association would suffer no unfair surprise or prejudice by her belated assertion of the quorum claim, especially since the evidence to prove or disprove the claim was within the Association's control and the September 8, 2003 trial date was still four months away.

The trial court did not rule on the Association's *in limine* motions or its motion for summary judgment at the May 20, 2003 status conference.[8] One week after the conference, however, the court issued a brief order granting summary judgment for the Association on Pellerin's remaining breach of contract claims.[9] Pellerin moved

---

bership to terminate a member's interest and lease.

5. Pellerin primarily argued that Sawyer's ownership and possessory interests could be terminated only by judicial decree.

6. Article VI, Section 4 of the By-laws states that "[t]he presence of a majority of the members shall constitute a quorum for the transaction of business at any meeting of the members of the Corporation."

7. Section 6 of Article VI provides that "[e]ach vote must be cas[t] in person if possible," but that "[v]oting by proxy is permiss[i]ble when written, signed, and sealed."

8. The court explained that it had received neither of the motions nor the Joint Pretrial Statement prior to the conference and thus was not familiar with the issues raised. The pretrial order issued after the conference states that the motions and the Association's objections to Pellerin's newly raised claims remained pending and unresolved.

9. Although the court did not include a statement of reasons for granting summary judgment, it cited two cases in which this court recognized the rights of cooperative housing associations to impose occupancy restrictions and to terminate proprietary leases for nonpayment of monthly charges. *See Burgess v. Pelkey*, 738 A.2d 783 (D.C.1999); *1915 16th*

pursuant to Super. Ct. Civ. R. 5 9(e) to alter or amend the summary judgment on the ground that the court had "failed to consider the asserted fact referred to in the Joint Pretrial Statement ... that there was no quorum present at the April 2, 2002 meeting." Pellerin also pointed out (for the first time in her reply to the Association's opposition to her motion) that proxy voting is prohibited by the District of Columbia's cooperative housing association law. *See* D.C.Code § 29–914 (2001) ("No member shall be permitted to vote by proxy."). The court denied the Rule 59(e) motion summarily, stating only that Pellerin had not shown "good cause" for the relief she requested.

Thereafter, on September 8, 2003, the court conducted a one-day bench trial on the Association's counterclaim.[10] In the end, the court found Sawyer's estate liable for most, but not all, of the assessed fees and charges, and awarded judgment to the Association in the amount of $21,493.06.

The court briefly postponed ruling on the Association's attorney's fee request, which was supported by an affidavit of counsel and an accompanying billing statement, to give Pellerin an opportunity to submit objections. The Association's counsel stated in his affidavit that the legal representation for which the Association requested a total of $23,216.57 in attorney's fees "included all aspects of the litigation between the parties." Pellerin filed an opposition to the fee request, arguing *inter alia* that the attorney's fee provision in Sawyer's lease entitled the Association to be reimbursed only for fees that were incurred in connection with the prosecution of its counterclaim, and that the host of other activities invoiced by its counsel[11] "do not fall within the purview of the attorney's fee provision." In response to this objection, the Association acknowledged that the invoiced activities "went to 'all aspects of the litigation between the parties,'" but insisted that the fees were all recoverable because they were reasonable and were "necessitated directly [by Pellerin's] actions." On October 6, 2003, after receiving the parties' submissions, the court awarded attorney's fees to the Association in the amount of $18,574. A footnote in the court's order states that the court "reduced the fee request by 20 percent for work that the court deems beyond the scope of 'an action' instituted 'against the lessee based upon such default'" (quoting Article 3, ¶ 13 of the lease). The order does not identify any specific legal charges

*St. Co-op. Ass'n v. Pinkett,* 85 A.2d 58 (D.C. 1951).

10. During the trial, Pellerin attempted to resurrect her arguments concerning proxy voting and the requirements for a quorum as a means of challenging the validity of some of the fees and charges assessed against Sawyer. The Association once again objected and referred to its *in limine* motion, but the court found it unnecessary, on the limited evidence presented, to rule on the objections or address the quorum and proxy voting issues that Pellerin tried to raise. While one of the Association's witnesses did testify that proxies sometimes had been used to meet quorum requirements at membership meetings he attended from 1998 through 2001, Pellerin proffered no evidence of a quorum problem at any meetings of consequence to the validity of the overdue assessments. No evidence was presented as to the use of proxies at the April 2, 2002 meeting.

11. These activities, Pellerin stated, included interactions with [Sawyer's grandson], ... [contacts with Sawyer's] former Conservator ..., termination of the membership rights of Melissa Sawyer, attending probate proceedings, reviewing pleadings in the instant case that relate to issues other than the prosecution of the counterclaim, the defense of the original complaint, and advice to the Cooperative on various matters concerning the relationship of the Cooperative to Melissa Sawyer....

for which the court declined to order reimbursement.

## II.

Pellerin's appeal raises two principal issues. The first issue is whether summary judgment should have been granted to the Association on Pellerin's breach of contract claims despite her unrefuted contention in the Joint Pretrial Statement that the April 2, 2002 membership vote to terminate Sawyer's interests in the Association was invalid for want of a proper quorum. The second issue is whether the attorney's fee award was excessive because it was not limited to legal work performed in connection with the Association's counterclaim. We conclude that a remand is in order for the trial court to revisit both issues.

### A. Summary Judgment

Before summary judgment was granted, Pellerin attempted to add a new claim against the Association—her claim that the vote to terminate Sawyer's membership in the Association was void for want of a quorum. Even though Pellerin did not formally move for leave to amend her complaint to assert that new claim, but instead merely included it at the eleventh hour in the Joint Pretrial Statement, precedent in this jurisdiction teaches that the trial court still was obliged to consider whether to allow it. *Lonon v. Bd. of Dir. of Fairfax Village Condo. IV Unit Owners Ass'n*, 535 A.2d 1386, 1388–89 (D.C.1988) (holding that preclusion of claim first raised in pretrial statement and not by amended complaint still "would require the court to find that the defendants were not on notice of the claim against them, that permitting the claim would cause undue delay, or that some other consideration justified forbidding the plaintiff to amend the complaint at trial").[12] The decision was committed to the trial court's discretion, though under this jurisdiction's well-established "policy favoring resolution of cases on the merits," the new claim should have been allowed absent "good reason ... to the contrary." *Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 501 (D.C.1994) (quoting *Bennett v. Fun & Fitness of Silver Hill, Inc.*, 434 A.2d 476, 478 (D.C.1981)).

The existing record does not disclose that the trial court made the necessary discretionary ruling on Pellerin's attempt to raise her new quorum claim. The court did not do so explicitly, either by ruling on the Association's *in limine* motion or otherwise, and its cryptic rejection of Pellerin's Rule 59(e) motion does not reveal the court's thinking. It is not obvious to us as a matter of law that the trial court could only have exercised its discretion in one way, to refuse to permit Pellerin to assert her quorum claim, and we will not encroach on the trial court's prerogatives by attempting to make the discretionary call ourselves.

The issue is material because if Pellerin should have been permitted to assert her quorum claim, then full (as opposed to partial[13]) summary judgment was granted prematurely. When the Association moved for summary judgment, it naturally

---

12. After the plaintiff in *Lonon* first raised his new claim in his pretrial statement, he (unlike Pellerin in the present case) reiterated the claim in his opposition to the defendants' motions for summary judgment and in his statement of material facts in dispute. 535 A.2d at 1387. Pellerin might have been well advised to follow that same course, but while her failure to do so may be taken into consideration in deciding whether her new claim should be allowed, it is not dispositive of the question.

13. There is no question that the Association was entitled to summary judgment on Pellerin's original breach of contract claims.

did not address Pellerin's not-yet-raised quorum claim. With respect to that claim, therefore, the Association understandably did not meet its "initial burden of demonstrating the absence of a genuine issue of material fact." *LaPrade v. Rosinsky*, 882 A.2d 192, 196 (D.C.2005); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (quoting the federal counterpart to Superior Court Civil Rule 56(c)). The court therefore had no basis on which to decide the merits of the quorum claim.

We therefore cannot affirm the award of full summary judgment on the existing record. Instead, we must remand with directions to the trial court to address whether Pellerin's *de facto* request for leave to amend her complaint to assert her quorum claim should be granted.[14]

**B.**

A remand is also necessary for the trial court to revisit and explain its award of attorney's fees. Article 3, paragraph 13 of Sawyer's proprietary lease states that "if the [Association] shall institute an ac-

tion ... against [Sawyer] based upon [her] default," Sawyer will reimburse the Association for the reasonable attorney's fees "thereby incurred by the [Association]." See footnote 3, *supra*. This provision thus carves out a limited exception to the otherwise applicable "American rule" that each party to litigation must bear its own attorney's fees. The only "action" that the Association can be said to have "instituted" against Sawyer based on her default was the Association's counterclaim for Sawyer's unpaid maintenance fees and other overdue assessments. The Association did not limit its attorney's fee request to its counterclaim, however; instead, the Association openly claimed the right to recover its legal costs for "all aspects of the litigation between the parties"—including not just its counterclaim, but also, as Pellerin pointed out, its defense of Pellerin's complaint and other activities. In our view, the Association's expansive reading of the fee-shifting provision cannot be squared with the specific language of that provision; even if the defense of Pellerin's complaint, for example, was related to Sawyer's default and was an "aspect" of the entire litigation, it was not itself either an action instituted by the Association against Sawyer (or her estate) based on her default, or a part of such an action. *See Oliver T. Carr Co. v. United Technologies Communications Co.*, 604 A.2d 881, 884–86 (D.C.1992); *Ochs v. L'Enfant Trust*, 504 A.2d 1110, 1118–19 (D.C.1986).[15]

---

**14.** If the court denies Pellerin leave to press her quorum claim, the case will be at an end and she will be able to take an immediate appeal. If the court grants Pellerin leave, however, the Association will have to await a final judgment before appealing.

**15.** We appreciate that the Association's defense of Pellerin's complaint "was integral to the prosecution of its counterclaim[ ]." *Kudon v. f.m.e. Corp.*, 547 A.2d 976, 981 (D.C. 1988). The counterclaim was compulsory.

Had the attorney's fee provision in this case been drafted as broadly as the fee-shifting provision at issue in *Kudon*, the Association likely would have been entitled to reimbursement of its defense expenditures—for unlike in this case, the provision in *Kudon* was not limited to actions instituted by the lessor. Instead, as we explained in *Carr*, 604 A.2d at 885, the "much more open-ended" provision in *Kudon* entitled the lessor to recover reasonable attorney's fees attributable to the lessee's

In reducing the fee request by twenty percent "for work that the court deems beyond the scope of 'an action' instituted 'against the lessee based upon such default,'" the trial court correctly recognized that some of the fees sought by the Association were not recoverable under Article 3 of the lease. However, because the court provided no additional explanation for its award, it is unclear how the court determined what charges should or should not be reimbursed. In particular, we are left in doubt as to whether the court agreed with Pellerin that the Association was entitled only to litigation fees incurred in prosecuting its counterclaim, or whether the court agreed with the Association that litigation fees related to defending against Pellerin's complaint also could be recovered. The Association's indiscriminate submission of all its legal costs added to the trial court's (and our) burden, making it more difficult to categorize individual charges with certainty. Furthermore, Pellerin has not, on appeal, identified with specificity the charges she contends she should not have to reimburse. From our own cursory inspection of the billing records, however, it is far from obvious that the Association incurred as much as 80% of its total charges in the prosecution of the counterclaim. The 20% trimming looks like a very rough cut indeed.

■ "This court generally defers to the broad discretion of the trial judge in the calculation and award of attorney's fees." *District of Columbia v. Hunt,* 520 A.2d 300, 304 (D.C.1987). "Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court [regarding the awarding of attorney's fees]." *Maybin v. Stewart,* 885 A.2d 284, 288 (D.C.2005) (quoting *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986)). In this case, however, we are uncertain whether the trial court properly construed and applied the attorney's fee provision of the lease. "Ordinarily we expect the trial court to explain how it arrived at its award of attorneys' fees"; in many cases, the failure to do so "renders the trial court's determination effectively unreviewable and has been held to constitute an abuse of discretion warranting reversal." *Fed. Mktg. Co. v. Virginia Impression Prods. Co.,* 823 A.2d 513, 530 (D.C.2003) (internal quotation marks and citation omitted). We therefore remand the case so that the trial court may clarify the basis for its award and, if necessary, modify its order so that only properly recoverable attorney's fees are awarded. In carrying out these tasks, the trial court may find it helpful to direct the Association to submit a revised fee request limited to fees that actually were incurred in prosecuting its counterclaim.

## III.

In conclusion, we remand this case for two purposes. First, the trial court should decide whether to allow Pellerin to amend her complaint to add her quorum claim, exercising its discretion and addressing all relevant factors. If the court grants leave to amend, the case shall proceed in the trial court on that claim only (and any other new claims that also may be allowed), as our decision does not resuscitate Pellerin's original claims on which the Association was granted summary judgment.

Second, the trial court also should clarify and, if necessary, modify its award of attorney's fees on the Association's counterclaim, in accordance with the principles set forth in this opinion. Since, in any event, the Association will not be entitled to attorney's fees incurred in its defense of Pellerin's complaint, the award of attor-

___

breach of contract without regard to how the fees were incurred.

ney's fees need not wait on the resolution of Pellerin's quorum claim.

*So ordered.*