Jack J. GRYNBERG, Individually and as General Partner for the Greater Green River Basin Drilling Program: 72–73, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Rocky Mountain Natural Gas Company, Intervenor.

Nos. 94–1699, 95–1134.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1995.

Decided Dec. 12, 1995.

Nancy J. Skancke argued the cause and filed the briefs for petitioner Jack J. Grynberg.

John T. Miller, Jr. argued the cause and filed the briefs for petitioner and intervenor Rocky Mountain Natural Gas Company.

Jill L. Hall, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was Jerome M. Feit, Solicitor, Federal Energy Regulatory Commission.

Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

In 1975, Jack J. Grynberg entered into a contract to sell natural gas to Rocky Moun-

tain Natural Gas Company in intrastate commerce. Rocky Mountain now argues that the contract was illegal because Grynberg had previously dedicated the gas to interstate commerce under a 1968 agreement between Grynberg and Mountain Fuel, an interstate pipeline. If the gas was dedicated to interstate commerce, the maximum lawful price of the gas would be lower than the contract price paid by Rocky Mountain. The Federal Energy Regulatory Commission decided that the gas had been dedicated to interstate commerce under the 1968 agreement.

Both Grynberg and Rocky Mountain have filed petitions for review. Grynberg contests the Commission's finding that the gas was dedicated to interstate commerce. Rocky Mountain contests the Commission's refusal to order Grynberg to refund certain overpayments. We grant Grynberg's petition for review because the Commission's interpretation of the 1968 agreement is not reasonable. We therefore vacate the Commission's orders and remand the case, without addressing Grynberg's other arguments and without considering Rocky Mountain's petition.

## I

In 1968, Grynberg entered into a contract with Mountain Fuel to sell gas from certain fields in Colorado. Grynberg applied to the Commission for a certificate of public convenience and necessity to sell the gas in interstate commerce. The Commission granted the certificate on March 24, 1969. Grynberg completed well No. 1–25 and sold the gas from that well to Mountain Fuel until November 1978.

In 1973, Grynberg drilled two new wells in the fields listed in the 1968 contract. Grynberg offered the gas from these wells—Nos. 1–24 and 1–36—to Mountain Fuel, but Mountain Fuel declined the offer. In 1975, Grynberg entered into a contract with Rocky Mountain to sell the gas from these two wells in intrastate commerce. Grynberg eventually drilled four additional wells—Nos. 2–25 (spudded in April 1988), 2–36 (June 1988), 4–25 (July 1990), and 5–25 (October 1990)—and sold the gas from these wells to Rocky Mountain under the 1975 agreement. The central issue in this case is whether the gas from these six wells was dedicated to interstate commerce by the 1968 agreement with Mountain Fuel.

Until 1978, the Federal Energy Regulatory Commission had authority to regulate only gas sold in interstate commerce. 15 U.S.C. § 717(b). In order to sell gas in interstate commerce, a seller had to receive a certificate of convenience and necessity from the Commission. 15 U.S.C. § 717f(c). Once the gas was certified—or dedicated to interstate commerce—it had to be sold in interstate commerce subject to the Commission's price regulations until the Commission permitted the service to be abandoned. 15 U.S.C. § 717f(b).

The scope of the dedication to interstate commerce is determined by the language of the certificate issued by the Commission. *See Sunray Oil Co. v. FPC*, 364 U.S. 137, 152–54, 80 S.Ct. 1392, 1401–02, 4 L.Ed.2d 1623 (1960). If the certificate is inconclusive, the dedication is controlled by the certificate application, and, if necessary, the contract underlying the application. *Gulf Oil Corp. v. FPC*, 563 F.2d 588, 594 (3d Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978). Here, the certificate does not provide any details about the scope of the dedication. It refers back to the application which, in turn, quotes Articles II–1 and II–2 of the 1968 contract, a copy of which Grynberg attached. The Commission based its decision on its interpretation of the contract. 62 F.E.R.C. ¶ 61,046 (1993).

The Commission's reading of the contract is entitled to judicial respect, *see Transwestern Pipeline Co. v. FERC*, 988 F.2d 169, 173 (D.C.Cir.1993), but here the Commission has gone beyond a fair construction to reach a result it has not supported. The Commission viewed the 1968 agreement as having dedicated all of the gas underlying the fields described in the contract to Mountain Fuel. This the Commission derived not from the body of the contract, but from the introductory "Whereas" clause, which states: "WHEREAS, Seller owns or controls, and desires to sell and Buyer desires to purchase Seller's share of gas underlying the lands

and leaseholds (subject lands) described in Appendix 'A'...."

In its order, the Commission brushed aside Article II of the contract, which is titled "Agreement to sell and reservations." Article II–1 states: "Seller agrees to sell to Buyer all gas owned or controlled by Seller, produced from or allocated to Seller's interest in subject gas reserves...." Article I–6 defines subject gas reserves to "include only gas reserves ... open to production in a completed well or wells connected to Buyer's pipeline" that "underlie the lands surrounding such wells." Such gas reserves "shall not be calculated to underlie more lands around any given well than ... the number of acres embraced within a valid spacing order." In Colorado, well spacing is approximately 40 acres.

■ The Commission explained that these provisions only "describe Grynberg's contract obligation to sell gas (i.e. gas from completed wells hooked up to Mountain Fuel and not, for example, gas from undeveloped reserves in place)." 62 F.E.R.C. ¶ 61,046. While we do not disagree with this reading, we fail to see how it supports the Commission's interpretation that in light of the "Whereas" clause, Grynberg was obligated to sell all of the gas underlying all of the subject lands to Mountain Fuel. In its brief, the Commission attempted to bolster its interpretation by explaining Article II as a take-or-pay provision. Take-or-pay provisions protect sellers from cash flow fluctuations by requiring buyers to pay for a certain percentage of the production from a well whether or not the buyer actually accepts delivery of the gas. *Transcontinental Pipe Line v. State Oil & Gas Bd.*, 474 U.S. 409, 412, 106 S.Ct. 709, 711–12, 88 L.Ed.2d 732 (1986) (citing Pierce, *Natural Gas Regulation, Deregulation, and Contracts*, 68 VA.L.REV. 63, 77–79 (1982)).

■ The Commission's interpretation of the contract and the reasons given for it do not survive close attention. Ignoring the rest of the contract, the Commission offers little more than an assertion to support its idea that the prefatory Whereas clause defines the scope of the dedication. According to the Commission, Grynberg agreed to sell all of the gas underlying the subject lands to Mountain Fuel. But if the Whereas clause defines the extent of the obligation to sell and dedicates all of the gas to Mountain Fuel, what is the role of Article II–1? It appears to determine Grynberg's obligation to sell: "Seller agrees to sell ... Seller's interest in subject gas reserves." The Commission's interpretation renders this provision meaningless, yet it is standard contract law that a Whereas clause, while sometimes useful as an aid to interpretation, "cannot create any right beyond those arising from the operative terms of the document." *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir.1985) (quoting *Genovese Drug Stores v. Connecticut Packing Co.*, 732 F.2d 286, 291 (2d Cir.1984)).

The attempt to portray Article II as a take-or-pay clause is, moreover, plainly wrong. A take-or-pay clause obligates the buyer to buy a certain percentage of the production of a well; Article II obligates the seller to sell all of the gas from wells connected to the pipeline. Further, Article II cannot be a take-or-pay clause because Article IV is a take-or-pay clause. Article IV–1(c) states: "Buyer's take obligation shall be limited to fifty percent of the amount Seller is able to produce on a sustained basis, with the take or pay obligation being limited to a maximum of 1.825 billion cubic feet of gas per year."

Because the Commission has not sufficiently supported its reading of the contract, we must vacate its orders and remand the case for reconsideration. In doing so we do not pass on the question, raised in oral argument, whether the contract might properly be interpreted to give Mountain Fuel an option or right of first refusal in gas from completed wells on the subject lands. That Grynberg offered the gas from wells 1–24 and 1–36 to Mountain Fuel might support this view. Grynberg himself suggested this possibility in his brief, stating that if Mountain Fuel "exercised the election to connect a new gas well" the sale would be governed by the 1968 agreement. However, the Commission did not rely on any such reasoning and we, therefore, cannot sustain the agency's orders on this basis. *SEC v. Chenery Corp.*,

318 U.S. 80, 95, 63 S.Ct. 454, 462–63, 87 L.Ed. 626 (1943).

## II

Grynberg asked the Commission to grant retroactive abandonment of the six wells. The Commission rejected his request, reasoning that the equities were against Grynberg because he had unclean hands and because he had "illegally" diverted gas to the intrastate market and "illegally" collected a price higher than the maximum lawful price.

The Commission will need to reconsider this decision if it finds, on remand, that the 1968 agreement dedicated the gas from the six wells to interstate commerce. Grynberg appears to have acted on a good faith belief that the six wells were not dedicated to interstate commerce. As we have seen, the contract is ambiguous; it is subject to more than one reasonable interpretation. Grynberg assumed that the contract dedicated only the 40 acres surrounding wells that were actually connected to Mountain Fuel's pipeline. Grynberg's position was clear in 1986 when Celeste Grynberg—Jack Grynberg's wife—applied to the Commission for complete abandonment of the 1968 contract. The application stated that she and Mountain Fuel had mutually agreed to terminate the 1968 agreement. The application described the agreement as covering only well 1–25 and sought abandonment of that well so that she could sell the gas to Rocky Mountain. The Commission granted the application and coded the action as an "abandonment" of service rather than an "amendment to delete acreage."

*Vacated and remanded.*