**TRILON PLAZA, INC., Appellant,**

v.

**COMPTROLLER OF the STATE
OF NEW YORK, Appellee.**

No. 99–CV–1244.

District of Columbia Court of Appeals.

Argued Sept. 6, 2000.
Decided Dec. 20, 2001.

Philip M. Musolino, Washington, DC, for appellant.

Richard G. Wise, Washington, DC, for appellee.

Before TERRY and SCHWELB, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge.

Appellant, Trilon Plaza, Inc. ("Trilon"), filed an action for breach of contract against the Comptroller of the State of New York, in his capacity as trustee of the state's Common Retirement Fund, and Mellon Mortgage Company. In its complaint Trilon alleged that the Comptroller had breached the terms of a promissory note by refusing to accept partial prepayments of the unpaid balance. The Comptroller filed a motion for summary judgment, which the trial court granted, ruling that there were no genuine issues of material fact and that, as a matter of law, Trilon did not have a right to make partial prepayments on the promissory note. Trilon appeals; we affirm.[1]

I

In 1972 Trilon and the Comptroller negotiated for loans totaling $34,550,000, to be paid to Trilon over the four phases of an urban redevelopment project in the District of Columbia known as Waterside Mall.[2] The present litigation, which concerns the Phase One loan (in the amount of $12,450,000), arises from the several contract documents which, read together, reflect the agreement between the parties. The relevant documents are as follows:

1. An unsigned letter dated May 5, 1972, from the Comptroller to Charles Bresler, a representative of Trilon, stating what it characterized as the "terms" of the loan. This letter, to which the parties generally refer as the "Commitment Letter," states that any note used to secure payment on a phase of the loan

> may be prepaid *in whole, but not in part,* on 30 days' notice, on the first day of any month following the tenth anniversary of the date of such Note at a price equal to the entire outstanding principal amount thereof, plus interest accrued and unpaid thereon, plus a premium which shall be 5% of the outstanding principal amount to be prepaid, if such payment is made during the 12 month period following the tenth anniversary of the date thereof, which premium shall decline by ½% for each succeeding anniversary to a minimum premium of 1%. [Emphasis added.]

1. Mellon Mortgage Company was dismissed as a defendant in the trial court and is not a party to this appeal.

2. Although the record is not entirely clear on this point, it appears that the Comptroller, as trustee of New York's state retirement fund, was investing some of that fund's money in the Waterside Mall project.

2. A second letter dated May 24, 1972 ("the May 24 letter"), from the Comptroller to Trilon and others,[3] which spells out in detail the phases of the loan as stated in the May 5 Commitment Letter. The May 24 letter also includes a provision that each of the four promissory notes is to be secured by a deed of trust on a portion of the maker's leasehold interest in the premises that are the subject of the development proposal. The May 24 letter states that its principal purpose is "to coordinate these financing arrangements, subject, however, to compliance with all the terms and conditions of the Commitment [Letter], so that the Phases of the Permanent Loan can be consummated...." This letter is signed by the Deputy Comptroller of the State of New York, on behalf of the Comptroller. Following his signature appears the statement, "The foregoing agreement is hereby accepted as of the date first above written," *i.e.,* May 5, 1972. Below that statement are the signatures of representatives of Trilon Plaza, Inc., Bresler & Reiner, Inc. (see note 3, *supra*), and the New York bank which had agreed to make some of the initial construction loans.

3. A deed of trust, dated July 15, 1974, and signed on August 22, 1974, incorporating in its "whereas" recitals both the Commitment Letter and the promissory note.

4. A promissory note ("the Note"), signed on August 22, 1974. The Note does not mention the Commitment Letter, but does refer to the deed of trust: "Reference is made to the Deed of Trust for a description of the property thereby bargained, sold, granted, mortgaged, conveyed, and assigned, the nature and extent of the

security for the Notes." The Note further states:

> The Company [Trilon] shall have the option on at least thirty (30) days' prior written notice by prepaid registered or certified mail to the payee at its address for the payment of principal and interest hereunder, to prepay *the entire outstanding principal amount of this Note* on September 1, 1984, or on the first day of any month thereafter.... [Emphasis added.]

The remaining terms of this option to prepay, such as the decreasing schedule of premiums to be paid upon prepayment, match the terms stated in the May 5 Commitment Letter.

In June 1998 Trilon tendered a partial prepayment of principal to Mellon Mortgage Company ("Mellon"), the servicer of the loan, in the amount of $275,338.52. The Comptroller and Mellon informed Trilon that they would accept this first prepayment, but that this acceptance did not waive their rights under the loan documents which prohibited such prepayments. In August 1998 Trilon proffered two additional prepayments of $554,060.05 and $1,000,000.00, respectively. The Comptroller rejected these prepayments on the ground that Trilon had failed to give prior notice of its intent to prepay or to pay the prepayment premium, as contractually required.

Trilon filed suit in the Superior Court, claiming that the Comptroller had breached the terms of the Note by refusing to accept its partial prepayments. The Comptroller filed a motion for summary judgment, asserting that under the terms of the contract Trilon had no right to make

---

**3.** One of the other addressees is an entity by the name of Bresler & Reiner, Inc., which has the same address as Trilon. The relation between Bresler & Reiner and Trilon is not clear from the record, but we note that Charles Bresler and Burton Reiner are principals of both corporations. For the purposes of this appeal, we need not attempt to untangle the relationships among these corporations and other entities.

a partial prepayment on the Note without giving prior notification and paying a premium. Trilon filed an opposition to the motion, accompanied by an affidavit from Mr. Bresler. The affidavit stated in part:

> The May 24, 1972 proposal contained no limits on prepayment. The sole reference to prepayment was contained in the Default Provision, which is inapplicable to the dispute in this case. The May 24, 1972 proposal provided that "... it revises the procedure by which the Permanent Loan contemplated by the Commitment shall be consummated."

The trial court granted the Comptroller's motion for summary judgment, stating in a handwritten addition to its order:

> The Court adopts the rationale of the defendant and additionally *finds facts alleged by plaintiff* in statement number 8 of its material facts not in genuine issue or dispute *to be inaccurate* as the May 24 1972 agreement signed by the parties contains [an] agreement on page 7 by plaintiffs not to seek to prepay the loans. Thus the parties have clearly expressed their understanding as to prepayment.... [Emphasis added.]

This appeal followed.

## II

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(c); *see Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983). On appeal from an order granting a motion for summary judgment, the record must be viewed in the light most favorable to the party opposing the motion. *E.g., Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C.1994) (en banc). Applying these basic principles, we conclude that the trial court correctly granted the Comptroller's motion.

Before addressing the merits, we must dispose of Trilon's preliminary assertion that the trial court erred by making a factual "finding" in its order granting the Comptroller's motion for summary judgment. Specifically, Trilon challenges the portion of the trial court's order in which it "finds" the "facts alleged by plaintiff [Trilon]" in paragraph 8 of its statement of facts not in issue "to be inaccurate." Further, Trilon asserts that the reference made by the court to page 7 of the May 24 letter does not support the court's statement that paragraph 8 was inaccurate. We agree that the court, in saying that it "finds" Trilon's allegations to be inaccurate, made an unfortunate choice of words. However, reading this portion of the order in the context of the whole record, we are satisfied that the court was not making a factual finding but, rather, was stating a legal conclusion.

It is true that page 7 of the May 24 letter only discusses prepayment in the event of default. However, another portion of the May 24 letter—namely, page 9—states that Trilon "hereby agree[s] that ... [it] will not seek or accept refinancing of, *nor seek to prepay,* such loans" (emphasis added). Read in light of this language, Trilon's paragraph 8 was clearly "inaccurate." We are satisfied that the trial court's reference to "page 7" was a slip of the pen, and that it should have said "page 9," since page 9—not page 7—supports the court's statement that paragraph 8 was inaccurate.

Moreover, the trial court, in reaching this conclusion as to the accuracy of paragraph 8, was merely construing the terms of the May 24 letter, and thus was ruling on a point of law. The task of the court was to construe the contract and determine its meaning. Trilon's contention below, as here, was essentially that

the contract was ambiguous on the subject of prepayment, and that summary judgment was thus unwarranted. *See Clyburn v. 1411 K Street Limited Partnership,* 628 A.2d 1015, 1017–1018 (D.C.1993). The trial court, however, ruled as a matter of law that the construction urged by Trilon was inaccurate, given the language on page 9 of the May 24 letter. It concluded that the May 24 letter did not remove the restrictions on partial prepayment that were contained in the Commitment Letter of May 5. Because that ruling was not a finding of fact,[4] we have no reason to reverse the judgment on the procedural ground asserted by Trilon.

We turn, accordingly, to the merits.

### III

#### A. *The terms of the contract*

Trilon asserts that the documents subsequent to the Commitment Letter deliberately omitted any limitations on partial prepayment and, therefore, that it had a right to make partial prepayments on the Note. The Comptroller argues, to the contrary, that the different documents incorporate one another and that the separate documents should be read together as one contract. *See, e.g., Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 366 (D.C. 1984) (citing cases). We think the Comptroller has the better argument.

■ Trilon contends, first, that the May 24 letter does not incorporate the language prohibiting partial prepayment that was used in the Commitment Letter. Trilon states, and the Comptroller agrees, that the *raison d'être* of the May 24 letter was "to coordinate [the] financing arrangements, subject, however, to compliance with all the terms and conditions of the Commitment [Letter], so that the Phases of the Permanent Loan [could] be consummated...." From this statement Trilon concludes that one purpose of the May 24 letter was to revise the unsigned Commitment Letter so as to remove the prohibition on partial prepayment.

This argument is weak. The Commitment Letter of May 5 expressly required additional agreements for the refinancing of the contract so that the original construction loans made by the bank could be transformed into permanent loans made by the Comptroller. Indeed, as the Comptroller notes, the Commitment Letter calls for a further agreement "providing for the sale to us [the Comptroller] of the construction note and mortgage." Accordingly, when the May 24 letter states that "[t]his agreement does not modify the Commitment [Letter] except to the extent that it revises the procedure by which the Permanent Loan contemplated by the Commitment [Letter] shall be consummated," it is referring to the procedure for the refinancing of the contract by the Comptroller, not to any (unexpressed) intent to remove the prepayment restrictions contained in the Commitment Letter.

Second, Trilon claims that any reference to the Commitment Letter in the "whereas" recitals of the deed of trust should be ignored as a "mere historical reference." It relies on *Perry v. Perry,* 88 U.S.App. D.C. 337, 190 F.2d 601 (1951),[5] to argue that a recital clause cannot be treated as an operative part of the contract. In *Perry* the appellant challenged the trial court's denial of his motion for a preliminary injunction. He claimed that he was entitled to injunctive relief based on a

---

4. Whether a contract is ambiguous is a question of law. *Clyburn,* 628 A.2d at 1017 (citing *King v. Industrial Bank of Washington,* 474 A.2d 151, 155 (D.C.1984)).

5. *Perry* is binding on this court under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

prior settlement agreement, which said in "the recital at the outset that it [was] designed to settle 'all property rights and differences existing between [the parties].'" *Id.* at 339, 190 F.2d at 603. The court held that "[i]f both the recitals and the operative part of a contract are clear, but they are inconsistent with each other, the operative part is to be preferred." *Id.* (citation and internal punctuation omitted).

However, *Perry* does not stand for the proposition that a recital clause can never be treated as an "operative part" of a contract. On the contrary, *Perry* at least implies that when the recital and the rest of the contract are consistent, the recital can indeed be considered as evidence of the parties' intent. *See American Nat'l Bank of Jacksonville v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1534 (11th Cir.1983) (holding that "'whereas clauses' may provide definitive evidence of the intent of the parties, particularly where there is no language in the operative portion of the contract which conflicts with the intent expressed in the recitals"). In this case the deed of trust states in a "whereas" clause that it is "subject to certain optional prepayments, all as specified in the [Commitment Letter]." This incorporation of the May 5 Commitment Letter in the recital clause of the deed of trust is consistent with the same incorporation in the May 24 letter. We conclude, accordingly, that *Perry* does not help Trilon's cause.

Trilon's final argument is that the Note does not limit partial prepayment. While the Note does place restrictions on prepayment of the "entire loan," it does not limit prepayment of part of the loan. Trilon

thus asserts that the absence of any limitation on partial prepayment in the Note is consistent with its view that the post-May 5 documents removed such restrictions. Again this argument is unconvincing. The Note does not refer to the Commitment Letter, but it does refer to the deed of trust, which in turn incorporates the terms of the Commitment Letter. The Commitment Letter says explicitly that the loan "may be prepaid in whole, but not in part," if certain conditions are met.

We hold, therefore, that the four documents—the May 5 Commitment Letter, the May 24 letter, the deed of trust, and the Note—must be read together as one contract. *See Vicki Bagley*, 482 A.2d at 366.

### B. *The "perfect tender in time" rule*

■ But even if the four documents were read separately, we would be bound by the common law rule which prohibits prepayment of a debt secured by a mortgage unless there is an agreement between the parties (or a statute) specifically permitting such prepayment. "[T]he majority rule in this country is, and for a long time has been, that, absent special agreement, the mortgagor in an unregulated transaction who promises to repay the loan, in installments at specified times or at a specified date, does not have a right to compel the creditor to accept prepayment." *Promenade Towers Mutual Housing Corp. v. Metropolitan Life Insurance Co.*, 324 Md. 588, 592, 597 A.2d 1377, 1379 (1991).[6] This common law principle has come to be known as the "perfect tender in time" rule. *See id.* at 602, 597 A.2d at 1384. In *Promenade* the Maryland Court of Appeals was called upon to decide

---

**6.** The court noted in *Promenade:* "The presumption against prepayment has been widely cited and applied in cases involving promissory notes secured by real property[.]" 324 Md. at 593–594, 597 A.2d at 1379–1380 (citing

cases from four federal courts and thirteen state courts). *See generally* Rebecca C. Dietz, Comment, *Silence is Not Always Golden: Mortgage Prepayment in the Commercial Loan Context,* 22 U. BALT. L. REV. 297 (1993).

whether a debtor had the right to prepay a promissory note, secured by a mortgage, when the note was silent as to prepayment. The court applied the perfect tender in time rule and held that, absent a statute [7] or agreement permitting prepayment, the mortgagor has no right to prepay. *Id.*

Trilon asserts that the District of Columbia has never fully accepted the perfect tender in time rule, and that this court should now seize the opportunity to adopt instead the so-called "civil law" rule set forth in the RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 6.1 (1996). The Restatement declares that "[i]n the absence of an agreement restricting or prohibiting payment of the mortgage obligation prior to maturity, the mortgagor has a right to make such payment in whole or in part." *Id.* Trilon also calls our attention to the case of *Mahoney v. Furches*, 503 Pa. 60, 468 A.2d 458 (1983), in which the Supreme Court of Pennsylvania adopted the civil law rule, and urges us to follow its reasoning. But controlling precedent bars us from going down that path even if we were inclined to do so. While the District of Columbia cases in this area are sparse, those that do exist teach us that this jurisdiction already follows the perfect tender in time rule. *See Atlantic Life Insurance Co. v. Wolf*, 54 A.2d 641 (D.C.1947); *Westminster Investing Corp. v. Equitable Assurance Society*, 143 U.S.App.D.C. 238, 443 F.2d 653 (1970).[8]

In *Wolf* this court was asked to consider whether a prepayment premium of 4½ percent was usurious, and hence in violation of an anti-usury statute. The contract at issue provided no option to accelerate payments on the loan. We held that the premium was not usurious:

> The law gave the lender the right to expect performance of the loan agreement according to its terms, and *the right to expect the agreed flow of payments, including interest, over the fifteen-year term of the loan.* That right is not affected by the debtor's election to pay the loan in advance of maturity.

*Id.* at 643 (emphasis added). Similarly, in *Westminster* the United States Court of Appeals considered whether a debtor who prepaid a mortgage loan in full (as authorized by the terms of the note) was also responsible, at the time of that prepayment, for interest that would have accrued between the payment date (December 5) and the due date for the next regular installment (February 1). The court stated, albeit in dictum, that "a lender cannot be compelled to accept prepayment of a mortgage note even when the full amount of interest for the full term of the mortgage is tendered...." *Westminster*, 143 U.S.App.D.C. at 242, 443 F.2d at 657.[9]

Both *Wolf* and *Westminster* support the application of the perfect tender in time rule in this case. As appellant admits, there are no cases in the District of Co-

---

**7.** The District of Columbia Code does provide that "[a] loan or financial transaction which is secured by a mortgage or deed of trust on *residential* real property ... may be prepaid by the borrower at no penalty at any time following the expiration of three years from the execution of the loan or financial transaction ..." D.C.Code § 28–3301(f)(1) (2001) (emphasis added). There is, however, no legislative equivalent for financial transactions secured by deeds of trust on *commercial* real property, such as Waterside Mall.

**8.** *Westminster* is binding on this court under *M.A.P. v. Ryan, supra* note 5.

**9.** The court found it unnecessary to apply the perfect tender in time rule, but it did conclude that the debtor was required by the prepayment clause in the note to pay the interest from December to February.

lumbia that follow the civil law rule. Moreover, even if we were to adopt the civil law rule, which we do not, it is by no means certain that Trilon would prevail. *See First Philadelphia Realty Corp. v. Albany Savings Bank,* 609 F.Supp. 207, 210–211 (E.D.Pa.1985) (holding in Pennsylvania, a civil law jurisdiction, that when parties have agreed on conditions for prepayment of the entire loan amount, they are presumed not to have agreed to partial prepayment unless the contract so states).

## IV

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*