ESTATE OF Leonard RALEIGH,
Appellant,

v.

Lawrence R. MITCHELL,
et al., Appellees.

Lawrence Mitchell, et al., Appellants,

v.

Estate of Leonard Raleigh,
et al., Appellees.

Nos. 03–CV–221, 03–CV–
396, 03–CV–1263.

District of Columbia Court of Appeals.

Argued Nov. 3, 2004.
Decided May 8, 2008.

St. John Barrett, Washington, for appellant and appellee Estate of Leonard Raleigh.

Daniel S. Roth, Washington, with whom Kurt Berlin was on the brief, for appellees and appellants Lawrence Mitchell and Aida Bastida.

Michael C. Mace, with whom Wayne F. Cyron was on the brief, for appellees E & G Investment Services and Edgar E. Gramajo.

Roger S. Mackey for appellee St. Paul Mercury Insurance Company.

Before REID, Associate Judge, and WAGNER * and FERREN, Senior Judges.

WAGNER, Senior Judge:

In appeal number 03–CV–221, appellant, the Estate of Leonard Raleigh, appeals from an order of the trial court granting summary judgment for appellees, Lawrence Mitchell, Aida Bastida, E & G Investment Services, Inc. and Edgar E. Gramajo, on the ground that the estate is not the legal owner of the real property that is the subject of this action and has no standing to sue on causes of action related to the ownership of the property. The estate argues that the trial court erred in failing to allow it to substitute the real party in interest and in awarding attorney's fees and costs to appellees. In appeal number 03–CV–396, Mitchell and Bastida appeal from an order of the trial court refusing to grant it judgment on the estate's personal representative's surety bond. We affirm the decision of the trial court granting summary judgment and denying judgment on the surety bond. We reverse the trial court's order awarding attorney's fees.

## I.

The Raleigh Estate argues that the trial court erred in granting the appellees' motion for summary judgment. Specifically, it contends that the trial court erred (1) in concluding that the Raleigh Estate had no standing to sue in its own right for real property titled in the name of the Atlanta Corporation and (2) in denying the estate the opportunity to substitute the corporation, which the court considered to be the real party in interest, as a party plaintiff. Appellees respond that the trial court properly granted them summary judgment because, even assuming that the Raleigh Estate could prove that the decedent owned all of the shares of the Atlanta Corporation at the time of his death, it would have no legal entitlement to any corporate asset. They contend that "piercing the corporate veil," the sole legal theory advanced by the Raleigh Estate in support of its claims, is not available to shareholders as a means of assuming individual rights to corporate assets.[1]

---

* At the time of argument, Judge Wagner was Chief Judge of the court.

1. Appellees also argue that this appeal should be dismissed because the appointment of the successor personal representative had expired before she filed a notice of appeal. The Superior Court reinstated the authority of the personal representative *nunc pro tunc* from June 26, 1999, well before the estate noted the appeals in this case. Appellees contend that they did not receive a copy of the petition to restore the personal representative to office. However, they have failed to demonstrate that they were entitled to service of the petition in the probate proceeding in which the personal representative's authority was restored. In

## A. Background/Standing Issue

In its fourth amended complaint, the Raleigh Estate sued the Atlanta Corporation, the appellees, and others to quiet title to certain real property in the District of Columbia, which it contended that the decedent owned at the time of his death, but had recorded in the name of the Atlanta Corporation.[2] The complaint stated that the properties were subject to deeds of trust held by appellees, Ana Mitchell and Aida Bastida, and that the trustees on one or more of the deeds of trust were Lawrence Mitchell, Richard Bruce Mitchell and C. Barry Mitchell. The estate alleged that foreclosure sales related to the properties were defective or improper and should be set aside. It also asserted that the Atlanta Corporation's corporate charter had been revoked and that its registered agent was deceased. Appellees filed a motion for summary judgment in which they acknowledged as undisputed that the subject real property was titled in the name of Atlanta Corporation, noted that the estate did not claim to be subrogated to the corporation's position, and argued that the estate had no claim to the properties or any cause of action pertaining to them. They also filed the supporting affidavit of Lawrence Mitchell, a professional title examiner, in which he averred that: he had handled several real property transactions for Atlanta Corporation in which Leonard Raleigh acted as agent or officer of the corporation in the 1980s and 1990s; that Raleigh provided him with a copy of Atlanta's Articles of Incorporation, which Mitchell verified were on file through the District's public records; that payment on the loans secured by Atlanta's real property were in default by November 1996; and, that the public records reflected that the corporation was in good standing during the years that the transactions occurred and in early 1997.[3] The trial court rejected as inapplicable the estate's *"alter ego"* theory by which it sought on behalf of the decedent as a corporate shareholder to pierce the corporate veil. Therefore, it determined that the estate had no standing to sue on behalf of the corporation and that the Atlanta Corporation would be the proper party plaintiff in the action.[4]

There is no dispute that all of the real property in which the estate claimed an interest was titled and recorded in the name of the Atlanta Corporation and remained so at the time of decedent's death.

---

any event, any challenge to the validity of the personal representative's appointment should have been made in the trial court in the probate proceeding. Therefore, we reject these arguments.

2. The estate also sought an injunction to preclude conveyance, transfer, or encumbrance of the property, the payment of the proceeds of the alleged unlawful sales, and other relief as the interest of justice requires.

3. Lawrence Mitchell averred in his affidavit that he is a professional title examiner, authorized title insurance agent, and operator of a title agency handling real property transactions in the District of Columbia.

4. In its written order, the court explained:

The Court is aware of no credible legal theory or precedent, and [the Raleigh estate] has proffered none that would permit [it] to sue on behalf of Atlanta Corporation *qua* Leonard Raleigh. [The estate's] reliance on an *"alter ego"* theory is misplaced and inapplicable. "Piercing the corporate veil" is an equitable doctrine that prevents culpable individuals from draping themselves with the corporate cloak and its attendant limitations on liability. The Court, however, is aware of no *inverse* "alter ego" theory by which a shareholder is permitted to "pierce the corporate veil" in order to bring suit on the corporation's behalf. In short, "piercing the corporate veil" facilitates the imposition of corporate obligations-it does not permit the assumption of corporate *rights* by shareholders.

The estate's theory in the trial court was that the corporation was the *alter ego* of Leonard Raleigh, or at least, there was a genuine material issue in dispute concerning that fact. As factual support for this claim, the estate relied on evidence that Raleigh maintained a bank account in the name of "Leonard Raleigh d/b/a Atlanta Corporation and that Lawrence Mitchell," one of the trustees on one or more of the deeds of trust wrote the attorney for the estate a letter in which he stated that

> I have known the late Mr. Raleigh since the late 1980s and dealt with him through his corporation, the Atlanta Corporation. On at least one or more occasions I questioned him as to the stock of Atlanta Corporation and his response was that he was the sole owner and did not intend to have any partners in the said corporation.

Appellees argue that even assuming that this evidence was sufficient to establish that Raleigh owned all of Atlanta's corporate stock, the estate as his successor would not have a direct interest in the corporation's properties that were lost at foreclosure that would entitle it to sue as owner.

### B. Applicable Legal Principles

▆▆▆▆ " 'The general rule is that a corporation is regarded as an entity separate and distinct from its shareholders.' " *Lawlor v. District of Columbia,* 758 A.2d 964, 975 (D.C.2000) (quoting *Vuitch v. Furr,* 482 A.2d 811, 815 (D.C.1984)). "[I]t is well established that because of the separate legal existence of a corporation, the corporate property is vested in the corporation itself and not the stockholders...." *Office of People's Counsel v. Public Serv.*

*Comm'n of the District of Columbia,* 520 A.2d 677, 681–82 (D.C.1987) (citation and internal quotation marks omitted). "Even if stock ownership is concentrated in the hands of one person, it does not alter the fact that title to the corporate property is vested in the corporation and not in the owner of its stock." *Id.* at 682 (citations omitted). Applying these principles in *Office of People's Counsel,* this court held that a corporation that owned all of the stock of its three wholly owned subsidiaries, which in turn owned numerous taxicabs, was not the legal owner of the vehicles. *Id.* at 682.[5] The reasons for the general rule precluding shareholders from suing individually to redress a corporate right are to avoid multiple suits, to prevent a bar to the corporation's right of action, and to ensure that any damages recovered will be available to the corporation's creditors and any other shareholders. 12B WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5910 (perm.ed., rev.vol.2000) ("FLETCHER"); *see Office of People's Counsel,* 520 A.2d at 682 (noting that even if the corporation went bankrupt, *the sole* shareholder would have no legal right to the corporation's assets, but only a right to share in the proceeds of liquidation). It is the corporate directors, and not its shareholders, who have the authority to manage the corporation, including decisions to litigate on behalf of the corporation. *Behradrezaee v. Dashtara,* 910 A.2d 349, 354 (D.C.2006) (citing *Flocco v. State Farm Mut. Auto. Ins. Co.,* 752 A.2d 147, 151 (D.C.2000) and D.C.Code § 29–101.04(2) (2001) *formerly* D.C.Code § 29–304(2) (1981) (providing that a corporation has the power "[t]o sue and be sued, complain

---

**5.** In *Office of People's Counsel, supra,* the question was whether the corporate holding company was an owner of the vehicles which would have qualified it (pursuant to D.C.Code

§ 44–305(a)(2)) to establish a sinking fund in lieu of insuring the taxicabs owned by its subsidiary corporations. *Id.* at 683.

and defend, in its corporate name ....")) (other citation omitted).[6]

## C. Analysis

It is undisputed that the title to the real property out of which the estate makes its claims was titled at the relevant time in the name of the Atlanta Corporation. Under the circumstances, the foregoing authorities support appellees' position that the estate would have no legal right to the individual assets owned by the corporation merely because its decedent was a shareholder or even the sole shareholder in Atlanta. *See Office of People's Counsel, supra,* 520 A.2d at 682. The corporation's property is vested in the corporation and not its individual shareholders. *Id.* at 681–82. The authority to sue to redress the alleged wrongs related to the foreclosures upon Atlanta's real property also belongs to the corporation, not to the individual shareholder. *See Behradrezaee, supra,* 910 A.2d at 354. Since the estate had no legal interest in the real property belonging to the corporation, it could not sue individually to redress any alleged wrongs against the corporation's property interests.[7]

Having not chosen to pursue a derivative action,[8] the estate sought in the trial court to proceed on the theory that the Atlanta Corporation was Raleigh's alter ego. Courts apply the "alter ego" theory "to cast aside the corporate shield and fasten liability on the individual shareholder," when substantial ownership of corporate stock is concentrated in one person or a few persons and other factors support disregarding the corporate entity in the interest of equity and fairness. 1 WILLIAM MEADE FLETCHER, ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.35 (perm.ed., rev.2006). Thus, this theory appears in cases where a party seeks to pierce the corporate veil and impose liability upon the corporation's shareholders. *See, e.g., Bingham v. Goldberg. Marchesano, Kohlman, Inc.,* 637 A.2d 81, 92 (D.C.1994). Generally, the corporate entity will be respected, but a party may be permitted to pierce the corporate veil upon proof " 'that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong,' " or "other considerations of justice and equity" justify it. *Id.* at 93 (quoting *Vuitch, supra,* 482 A.2d at 815 (internal quotation marks omitted)). In determining whether the corpo-

---

6. The derivative form of action is available to shareholders " 'to enforce a *corporate* cause of action against officers, directors, and third parties.' " *Behradrezaee, supra,* 910 A.2d at 354 (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (other citations omitted; emphasis in the original)). Pleadings in derivative actions are governed by Super. Ct. Civ. R. 23.1. *Id.* at 355 (citation omitted). However, in none of its complaints has the estate claimed to be suing derivatively on behalf of the corporation or even sought to conform its complaint to the strict requirements of Rule 23.1. Therefore, we have no occasion to consider any issue raised in this action in the context of a derivative action.

7. "The stockholders are equitable owners of the property and assets of the corporation." *J.D.P. v. F.J.H.,* 399 A.2d 207, 210 n. 1 (Del. 1979) (citations omitted); *see id.* at 211 (holding that "an increase in retained earnings of a corporation controlled by a spouse *may* be included in the calculation of the couples' marital property" under the theory that the court was dividing the husband's equitable interest in the corporation). This court has recognized that principle. *See Office of People's Counsel, supra,* 520 A.2d at 681. However, such equitable interest does not alter the fact that title to corporate property is vested in the corporation, or permit a shareholder to sue on causes of action properly belonging to the corporation. *See id.* at 681–82.

8. See note 6, *supra.*

ration is the alter ego of its shareholders, the court will consider various factors, such as "(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors." *Id.* (citing *Vuitch*, 482 A.2d at 816) (reversing the imposition of personal liability upon a shareholder where the evidence failed to establish these elements); *accord Flocco, supra*, 752 A.2d at 155 (citation omitted) (affirming dismissal of a party's complaint seeking to pierce the corporate veil where there were no allegations of inadequate capitalization of the corporation, failure to observe various corporate formalities, or commingling of funds).

▪▪▪ In this case, the estate sought to use the "alter ego" theory to pierce the corporate veil of Atlanta, not to impose shareholder liability, but in an effort to claim that Raleigh, the majority shareholder, owned in his individual capacity the real property titled in the name of Atlanta Corporation. Since it is equitable in nature, "the [alter ego] doctrine can be invoked 'only where equity requires the action to assist a third party.'" *McCarthy v. Azure*, 22 F.3d 351, 362–63 (1st Cir.1994) (quoting 1 FLETCHER, *supra*, at § 41.10) (other citations omitted). "'The ultimate principle is one permitting its use to avoid injustice.'" *United States v. Andrews*, 330 U.S.App. D.C. 420, 427, 146 F.3d 933, 940 (1998) (quoting *Quinn v. Butz*, 166 U.S.App. D.C. 363, 379, 510 F.2d 743, 759 (1975)); *Lawlor, supra*, 758 A.2d at 975 (quoting *Vuitch, supra*, 482 A.2d at 815) (explaining that piercing the corporate veil requires, *inter alia*, evidence of "use of the corporate form to perpetuate fraud or wrong"). The estate's decedent is not in

the position of an innocent third party requiring invocation of the alter ego doctrine to avoid an injustice resulting from someone else using the corporate form. Where the person seeking to pierce the corporate veil "is himself the one who is claimed to have obscured the line, he cannot be permitted to use the alter ego designation to his own behoof." *McCarthy*, 22 F.3d at 363; *see Andrews, supra*, 330 U.S.App. D.C. at 427, 146 F.3d at 940 (holding that the sole shareholder "cannot don the mantle of an innocent party in order to pierce the cloak of his own fraud").

Moreover, the estate provided little, if any evidence, in support of its motion for summary judgment that the corporation was Raleigh's alter ego. For example, it did not offer evidence that Atlanta Corporation disregarded corporate formalities, that there was extensive intermingling of corporate assets with Raleigh's personal assets, that capitalization was inadequate, or that Raleigh fraudulently used the corporation to protect his business from creditor's claims. *See Bingham, supra*, 637 A.2d at 93 (citation omitted) (listing such factors for consideration in determining viability of alter ego theory). The estate pointed to only one bank account for which Raleigh listed himself as doing business as Atlanta Corporation. Absent is evidence of the remaining factors. Under the circumstances, the trial court properly concluded that the estate, as Raleigh's successor in interest, could not rely on the alter ego theory to assert ownership of Atlanta Corporation's assets and pursue in its individual capacity a cause of action belonging to the corporation.

▪▪ Super. Ct. Civ. R. 17(a) provides, in pertinent part:

Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the

ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

In applying this rule, this court has stated "that an action should not be dismissed without a fair opportunity to substitute the real party in interest." *Duckett v. District of Columbia,* 654 A.2d 1288, 1290 (D.C. 1995); *see id.* at 1291 (reversing the trial court's decision dismissing an action for lack of standing because it "fail[ed] to provide the plaintiff with an opportunity to substitute herself as personal representative [of her son's estate] as the real party in interest").[9] The estate contends here that the trial court violated Rule 17(a)'s mandate by failing to provide it the opportunity to substitute Atlanta Corporation as the plaintiff. Appellees argue that the trial court properly denied the estate's request to substitute the Atlanta Corporation as plaintiff, which the estate first made in its motion to reconsider the court's order granting summary judgment, because a reasonable time had long since expired, and the estate still had filed no

motion for leave to amend the complaint or submitted a proposed new pleading.

The trial court did not provide reasons for its order denying the estate's motion for reconsideration and request for an opportunity to substitute the Atlanta Corporation as the real party in interest. Appellees argue that Rule 17(a) was intended to avoid dismissal at the beginning of the litigation when determination of the proper party is difficult or an honest mistake.[10] They point out that the trial court's order granting summary judgment for lack of standing came some thirty-four months after the estate filed its initial complaint and was rejected because the alter ego theory it pursued was not viable. They also contend that they challenged the estate's standing in motions to dismiss the first amended complaint and in answer to each amended complaint as an affirmative defense.

At least in answer to the second amended complaint, appellee Lawrence Mitchell asserted as a defense that the estate lacked standing to bring the action. That answer was filed some twenty-nine months before the trial court granted appellees summary judgment based upon the estate's lack of standing.[11] The estate itself apparently recognized Atlanta's legal interest in the subject real property. In each of its complaints, the estate named Atlanta Corporation as a party defendant

**9.** In *Duckett,* this court reversed the trial court's order dismissing for lack of standing a mother's action alleging negligence as the cause of her son's death, filed in her individual capacity, rather than as her deceased son's personal representative. *See* 654 A.2d at 1289.

**10.** *See* FED.R.CIV.P. 17(a) advisory committee's note (1966). Super. Ct. Civ. R. 17(a) is modeled after the comparable federal rule.

**11.** In support of a motion to dismiss the third amended complaint for failure to join indispensable parties, appellee Lawrence Mitchell

claimed that the trial court had urged the estate to research the status of the titles to the real property in question and to identify who held interests of record. Motions were also filed by appellees, E & G Investment Services, Inc. and Edgar Gramajo. The trial court denied the motions, except with respect to the Vermont Avenue property. With respect to that property, the trial court gave the estate thirty days within which to file an amended complaint by adding two indispensable parties or show cause why they were not necessary parties. The estate filed a fourth amended complaint adding the two parties.

and asserted that the property was titled in the corporation's name. However, appellant chose to pursue its own interest on an alter ego theory. Only after its legal theory proved to be unsuccessful and summary judgment was entered for appellees did the estate seek to secure the benefit of substitution of the real party in interest under Rule 17(a). However, the estate did not claim in its motion for reconsideration whether or how it intended to proceed to secure authority to act on behalf of the corporation.[12] Rule 17(a) indicates that an action should not be dismissed because it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for substitution of that party. *Duckett, supra,* 654 A.2d at 1290 (citing *Jaramillo v. Burkhart,* 999 F.2d 1241, 1246 (8th Cir.1993)). On the unique facts of this case, appellees' arguments that more than a reasonable time had been allowed for the estate to substitute the proper party plaintiff in the action and that the case was dismissed because the estate could not prevail on the legal theory that it advanced are persuasive. Under the circumstances, we find no error in the trial court's decision denying appellant's motion for reconsideration requesting that it be permitted to substitute the corporation as party plaintiff. *Cf. Duckett, supra,* 654 A.2d at 1291 (reversing dismissal for lack of standing where the plaintiff had made an honest error and moved to add the proper party within a reasonable time).[13]

## II.

The estate argues that the trial court erred in awarding attorney's fees and costs to appellees. It contends that under the well-established American Rule, parties to litigation must bear their own legal fees and expenses. Appellees respond that several of the secured notes and trust deeds on the foreclosed properties contain contractual attorney fee provisions, which form the basis for their recovery against the estate.

 Under the "American Rule," generally, each litigant must bear his or her own attorney's fees and litigation costs. *Concord Enter. Inc. v. Binder,* 710 A.2d 219, 225 (D.C.1998) (citation omitted). An exception arises when the parties by contract agree that one or the other shall pay such fees and costs. *Id.* (citing *Urban Masonry Corp. v. N & N Contractors,* 676 A.2d 26, 33 (D.C.1996)). The applicability of this limited exception to the American Rule will depend upon whether the parties agree to fee-shifting as reflected by the language in the parties' contract. *See, e.g., Pellerin v.1915 16th Street, N.W. Coop. Ass'n, Inc.,* 900 A.2d 683, 689 (D.C.2006) (holding that a contract provision limiting recovery of attorney's fees to actions instituted by a cooperative association for default by its member was not broad enough

---

**12.** The estate alleged in its initial complaint that the corporation's charter had been revoked. In this jurisdiction, by statute, remedies may survive dissolution, and suits may be prosecuted or defended by the corporation in its corporate name within two years of the date of dissolution. *See* D.C.Code § 29–101.97 (2001). The estate made no representations about whether the corporation could meet the criteria for invocation of this statutory provision or that it could represent the corporation.

**13.** In light of our disposition, we need not address the estate's argument that the trial court erred in denying its motion for partial summary judgment based on its claim that it was entitled to judgment quieting title to the Vermont Avenue property in the name of the estate. The estate concedes that its argument concerning the trial court's ruling that its motion for a pretrial order and sanctions is moot is appropriate for consideration only if summary judgment is reversed. Therefore, we do not address it.

to include attorney's fees incurred in defending against the member's representative's suit for breach of contract); *Concord Enter.*, 710 A.2d at 225 (remanding the case to the trial court for a determination of whether attorney's fees and costs claimed fit within the terms of a deed of trust and whether any breach by the lender relieved the borrower of liability for same); *Oliver T. Carr Co. v. United Tech. Commc'n Co.*, 604 A.2d 881, 884 (D.C.1992) (holding that a contract providing for a defaulting purchaser to pay reasonable attorney's fees where seller had to undertake collection efforts did not cover fees for seller's defense of buyer's claims for breach of contract and warranty). Thus, a close examination of any relevant contractual language is required to determine the scope of any claimed fee-shifting provision.

 Appellees relied upon the notes and deeds of trust related to two pieces of property identified in the complaint to support their claim for attorney's fees and expenses.[14] First, they relied on an attorney's fee provision in a 1993 note and deed of trust on real property at 1002 Rhode Island Avenue, N.W., securing the indebtedness. The promissory note was executed by Atlanta Corporation, but Raleigh guaranteed its payment. The note provides that "all guarantors hereby agree that in the event this note is placed in the hands of an attorney for collection after a declaration of default they agree to pay all costs of collection, including but not limited

to attorneys fees of Fifteen percent." This court has previously rejected the argument that a narrow fee-shifting provision of this type can be read reasonably to support the recovery of attorney's fees incurred by a creditor in defense of a debtor's claims for breach of contract or breach of warranty. *See Pellerin, supra,* 900 A.2d at 689; *Carr, supra,* 604 A.2d at 884. The fee provision in *Pellerin* provided in pertinent part: "If the Lessee [member] shall at any time be in default hereunder, and if the Lessor [association] shall institute an action or summary proceeding against the Lessee based upon such default, then the Lessee will reimburse the Lessor for the expense of attorney's fees...." *Pellerin,* 900 A.2d at 685 n.3. This court reasoned in *Pellerin* that even if the association's defense of the member's breach of contract claim was an aspect of the entire litigation, it was not, as the contract language required for fee-shifting, an action instituted against the member (or her estate) based upon her default.[15] *Id.* at 689.

The fee provision of the 1993 note in this case is even more narrow than the fee provision in *Pellerin,* in that here, the language allows recovery of attorney's fees only if the note is placed with an attorney for collection, and it limits those fees to 15% of the amount recovered. The litigation here is not an action placing the note with an attorney for collection because of the borrower's default.[16] Therefore, it does not come within the language of the

---

14. The trial court stated that it was awarding attorney's fees, having considered the motion, the estate's opposition, the reply and sur-reply, "based on the reasonable fee provisions of the trust deeds and notes." The specific notes and deeds of trust documents are not identified in the order. Therefore, on appeal, we consider only those documents presented to the trial court for consideration and then addressed in argument on appeal.

15. In *Pellerin,* this court distinguished *Kudon v. f.m.e. Corp.,* 547 A.2d 976 (D.C.1988),

where the broad scope of a fee-shifting provision was held to encompass fees for the defense of a lessee's complaint for tortious interference with contract relations and compulsory counterclaim for breach of the lease agreement. *Pellerin, supra,* 900 A.2d at 689 n. 15.

16. *See Szego v. Kingsley Anyanwutaku,* 651 A.2d 315, 317 (D.C.1994) (citations omitted) (holding that the holder of a note secured by a deed of trust has two remedies that may be pursued consecutively, *i.e.,* a suit on the note

fee-shifting provision. *See Pellerin, supra,* 900 A.2d at 689; *Carr, supra,* 604 A.2d at 884. Limitation of the amount of attorney's fees to a percentage of the amount recovered in a collection action also suggests that the language can not be read broadly to cover the defense of related actions or counterclaims. To the extent that the deed of trust securing the indebtedness incorporates by reference the terms of the promissory note, the incorporated fee provision is subject to the same limitations, and therefore, the deed of trust does not support the award.

There is another impediment to appellees' recovery of attorney's fees based upon the 1993 deed of trust. Only the Atlanta Corporation, which owned the property at the time, executed this deed of trust conveying an interest as security for the loan.[17] While the decedent personally guaranteed repayment of the promissory note, there is no showing that he was a party to the deed of trust or agreed to be bound by its separate covenants and undertakings. Raleigh's estate cannot be held liable for attorney's fees in derogation of the American Rule where its decedent never agreed by contract (here, the deed of trust) to be bound for same. *See Carr, supra,* 604 A.2d at 884; *Kudon, supra* note 15, 547 A.2d at 979.[18] Therefore, an award of attorney's fees could not be based upon the 1993 promissory note and deed of trust.[19]

■ Appellees also rely upon a 1996 promissory note and deed of trust on 1702–10th Street, N.W. securing repayment, both of which Raleigh executed personally.[20] It appears to be undisputed that the 10th Street property passed to the surviving joint tenant upon Raleigh's death by right of survivorship. *See Gallimore v. Washington,* 666 A.2d 1200, 1203–04 (D.C. 1995) (noting that the surviving joint tenant's interest becomes exclusive upon other joint tenant's death). Although conceding that the 10th Street property vested in the surviving joint tenant after Raleigh's death, appellees argue that Raleigh remained personally liable on the promissory note, which incorporated by reference

---

or a foreclosure action against the property securing the debt).

17. Appellees prevailed on their claim that the decedent Raleigh had no interest in the real property covered by this deed of trust.

18. *See also McCarthy, supra,* 22 F.3d at 363 (holding that a majority stockholder could not claim the benefit of an arbitration provision in a contract made by the corporation where the claim was based on an alter ego theory which the court rejected).

19. The only other provision in the 1993 deed of trust that references attorney's fees appears in a "whereas" clause. It is not clear that this clause would support appellees' claim for attorney's fees related to the estate's action to quiet title. *See Trilon Plaza, Inc. v. Comptroller of the State of New York,* 788 A.2d 146, 151 (D.C.2001) (citing *Perry v. Perry,* 88 U.S.App. D.C. 337, 190 F.2d 601 (1951)) (noting that *Perry* implies that when a whereas clause is consistent with the remaining parts of a contract, the former may be considered as evidence of the parties' intent). *But see Grynberg v. Federal Energy Regulatory Comm'n,* 315 U.S.App.D.C. 154, 157, 71 F.3d 413, 416 (1995) (citation omitted) (rejecting Commission's conclusion that a prefatory Whereas clause defined the extent of an obligation covered in another article of a contract based upon standard contract law that such clauses cannot create rights beyond those set forth in the operative terms). However, in light of our disposition of the issue, we need not resolve whether this Whereas clause can support a claim for attorney's fees against the estate.

20. Both the note and deed of trust appear to have been executed by decedent, Raleigh, in his individual capacity, although he also consented to the note on behalf of Atlanta Corporation. The grantors in this deed of trust are listed as decedent, Raleigh, and Ella Dunlap, joint tenants.

the attorney fee provisions found in the deed of trust. The note provides: "If suit is brought to collect on this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of the suit, including, but not limited to, reasonable attorney's fees." Again, this language is limited in scope to costs and expenses, including attorney's fees, of a collection suit brought for nonpayment of the note. As such, it is similar to the language in the cases discussed previously, which have rejected recovery of attorney's fees for defense of the borrower's or seller's claims where, as here, no such action has been instituted. *See Pellerin, supra,* 900 A.2d at 689; *Carr, supra,* 604 A.2d at 884. The note also references deeds of trust given on the same date to secure the indebtedness and incorporates by reference their terms, covenants, and conditions. However, the only deed of trust of "even date" in the record that appellees address in their argument on appeal is the one for the 10th Street property.[21] The attorney's fee provisions in this deed of trust are stated in pertinent part in the margin of this opinion.[22] The question is whether, under the circumstances presented, these provisions entitle appellees to recover attorney's fees to defend the suit brought by the decedent's estate.

**21.** The promissory note to which Atlanta Corporation consented through Raleigh as president reflects that the borrower granted as additional collateral the equity in 1000 and 1002 Rhode Island Avenue, N.W., "by execution of a Deed of Trust for that purpose." However, it does not appear that any deed of trust related to the 1996 loan, other than the one related to the 10th Street property, was "executed for that purpose" or presented in the trial court or to this court on appeal. Therefore, we consider only the deed of trust related to the 10th Street property.

**22.** The 1996 deed of trust provides as follows:
7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees....
Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust.
\* \* \*
18. Acceleration; Remedies .... upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall mail notice to Borrower ... specifying: (1) the breach; (2) the action required to cure such breach; (3) a date ... by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by the Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees.

Appellees rely upon this court's decision in *Kudon, supra* note 15, 547 A.2d 976, in support of their claim for attorney's fees. In *Kudon,* this court affirmed the trial court's order awarding attorney's fees to a lessor for its successful defense of a lessee's suit alleging tortious interference with contract. *Id.* at 980–81. The lessor had counterclaimed for breach of the lease agreement, for conversion of the property (a postage meter) that was the subject of the agreement, and for replevin. *Id.* at 976–77. The agreement provided that the lessee could recover attorney's fees in the event that the lessee breached the agreement or "if any writ, process or proceeding shall be instituted where the Meter may be levied upon or affected." *Id.* at 980. In sustaining the award, this court found that specific criteria for allowing attorney's fees for defense of a claim and asserting a counterclaim, which we discuss hereinafter, had been established. *Id.* The estate argues that the present case, unlike *Kudon,* is not a combined proceeding in which the defense had to pursue a counterclaim or face the possibility of being collaterally estopped from doing so. *See id.* at 981. This is an important distinction. *See id.* Here, appellees did not file a counterclaim seeking to collect upon the 1996 note upon which they rely to support their claim for attorney's fees. Thus, unlike *Kudon,* appellees' defense against the estate's complaint was not integral to any efforts to collect on the note. Appellees suggest that since the estate sought to set aside the foreclosure sale, they had to defend in order to retain any money collected as a result. A major flaw in this argument as it relates to the 1996 note is that appellees did not seek in this action any judgment on the decedent's note against his estate. Any cause of action that they might have on the note against Raleigh, the maker, would not be eliminated solely because the estate sought to challenge the manner in which appellees handled their foreclosure remedy. *See Szego, supra* note 16, 651 A.2d at 318 (holding that a mortgagee may pursue remedies of a money judgment on the note and foreclosure pursuant to a deed of trust in any sequence without violating the doctrines of *res judicata, collateral estoppel* and election of remedies). Under the circumstances, we find no basis for concluding that appellees are entitled to attorney's fees in this action based on the provisions for same incorporated by reference into the 1996 note.[23]

The estate also argues persuasively that even an analysis applying the criteria identified in *Kudon* does not warrant recovery of attorney's fees in this case. The relevant factors identified in *Kudon* for determining whether to award attorney's fees for defense of a claim are: (1) whether the party requesting fees precipitated the litigation; (2) whether the litigation was bonafide and required because of the party opposing payment; (3) whether the claim by the opponent of payment was raised to offset or reduce the debt owed; and (4) whether it was necessary for the party

---

**23.** There is no dispute that the 10th Street property passed by right of survivorship upon decedent's death to the surviving joint tenant. *See Gallimore, supra,* 666 A.2d at 1203–04. Since the estate never had any interest in the real property securing repayment of the debt, there appears to be no way that this litigation could foreclose any rights that appellees might have in the security. While the estates's fourth amended complaint lists this property, along with three others, as one that decedent owned when he died, it also states that decedent was the "beneficial owner" only of those properties standing in the name of Atlanta Corporation. The 10th Street property was not in the name of the Atlanta Corporation; however, the fourth amended complaint alleges that the notice of foreclosure stated that all four properties would be sold as a group in order to discourage potential buyers other than the noteholder or his family members.

requesting the fees to defend against the claim in order to collect or enforce the underlying contractual obligation. 547 A.2d at 980. Assuming without deciding that the first factor (*i.e.,* who precipitated the litigation) means no more than who filed the lawsuit, that factor would weigh in appellees' favor, as the estate originated the action.[24] However, none of the remaining factors supports an award of attorney's fees against the estate under the terms of the 1996 note. Litigation related to the note itself was not made necessary by the estate. In fact, appellees asserted no claim based on the note. As for the third factor, the estate's claim was not asserted in an attempt to reduce or extinguish the debt owed on the 1996 note. Finally, for the reasons stated previously, it was not necessary for appellees to defend the complaint in order to enforce the debt evidenced by the 1996 note which contained the attorney's fee provisions appellees relied upon. Apparently, appellees opted to leave the pursuit of an *in personam* remedy on the note for another day, and did not assert it in this action. *See Szego, supra* note 16, 651 A.2d at 318.

Since the *Kudon* factors weigh heavily in the estate's favor and for all of the foregoing reasons, we conclude that appellees failed to demonstrate their entitlement to attorney's fees.

For the foregoing reasons, the judgment of the trial court in appeal no. 03–CV–221 is affirmed with the exception of its order awarding attorney's fees and costs to appellees, which we reverse and remand with instructions to vacate. In light of our disposition, appeal no. 03–CV–1263, in which Mitchell and Bastida seek reversal of the trial court's order vacating a prior order granting them a judgment on the personal representative's surety bond in the probate proceeding to cover costs and attorney's fees, is affirmed.

*So ordered.*

24. The estate argues that the litigation was precipitated by appellees' misconduct in the manner in which the foreclosures were conducted. Since the case was dismissed for lack of standing, the merits of its contention cannot be evaluated. In light of our disposition, we need not decide whether the first factor means no more than who precipitated the action.